## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VETERANS GUARDIAN VA CLAIM CONSULTING, LLC; JOHN F. RUDMAN; and ANDRE JESUS SOTO, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of New Jersey, <br><br> *Defendant.* | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Civil No. 3:23-cv-20660 |

Stephen M. Baldini, N.J. Bar No.
0410411990
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
44th Floor
New York, NY 10036
Tel: (212) 872-1000

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Veterans Guardian VA Claim Consulting, LLC
75 Trotter Hills Circle
Pinehurst, North Carolina 28374

John F. Rudman
30 Continental Lane
Marlton, New Jersey 08053

Andre Jesus Soto
385 East Main Street, Apt. 1
Somerville, New Jersey 08876

Matthew J. Platkin
Office of the Attorney General
R.J. Hughes Justice Complex
P.O. Box 080
3rd floor W. Wing
Trenton, NJ 08625-0112

Plaintiffs, by and through their attorneys, bring this Complaint against Matthew J. Platkin, in his official capacity as Attorney General of New Jersey, and state the following in support thereof:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action to vindicate their First Amendment rights to speak, associate, and petition the government with respect to the provision of disability benefits owed to veterans for honorable service to the country.

2.     On August 25, 2023, Governor Phil Murphy signed into law Senate Bill 3292 ("S3292"), P.L. 2023, c. 150, §§ 1–2.  The law supplements N.J. Stat. Ann. § 56:8-1 *et seq.*, New Jersey's Consumer Fraud Act, making it a violation for any individual or entity to receive compensation for advising or assisting veterans with claims before the U.S. Veterans Administration ("VA"), except in narrow circumstances.

3.     Plaintiff Veterans Guardian VA Claim Consulting, LLC ("Veterans Guardian" or the "Company") provides consultant services to veterans in all fifty states, including New Jersey, by advising and assisting veterans who plan to petition the VA for disability benefits.  Because Veterans Guardian receives compensation for its services, it can no longer advise New Jersey veterans who want to submit a claim to the VA.

4.      Plaintiffs Colonel John F. Rudman and Sergeant Andre Jesus Soto (together, the "Veteran Plaintiffs") are veterans who reside in New Jersey.  The Veteran Plaintiffs wish to retain Veterans Guardian to advise them as they prepare to submit claims to the VA for increased disability ratings and benefits.  The Veteran Plaintiffs cannot do so because Veterans Guardian can no longer conduct business in New Jersey.

5.      Veterans Guardian and the Veteran Plaintiffs bring this action to challenge S3292 under the First Amendment of the United States Constitution. S3292 violates the Plaintiffs' First Amendment rights by unlawfully restricting their speech based on content.  Specifically, S3292 targets speech in the form of advice and assistance (to include instruction, education, guidance, etc.) when it concerns a "veterans benefits matter," as broadly defined in the statute.  And it targets particular speakers—namely, individuals and entities that assist veterans for compensation and are not accredited by the VA.  S3292 also violates the First Amendment rights of the Veteran Plaintiffs to discuss their claims with Veterans Guardian, to petition the government for redress of grievances, and to associate for that purpose.

6.      S3292 is not narrowly tailored to further a compelling government interest.  Contrary to Supreme Court precedent, New Jersey has "lump[ed]" responsible industry participants like Veterans Guardian together with companies that might not be so scrupulous and broadly prohibited all from accepting

- 4 -

compensation for assisting veterans with their claims. *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980). Even if New Jersey adequately articulated or justified its interest in protecting veterans in connection with S3292, it must act through regulations "narrowly drawn to achieve that end." *Startzell v. City of Philadelphia*, 533 F.3d 183, 193 (3d Cir. 2008). S3292's indiscriminate prohibitions fall far short of that rigorous standard.

7.     S3292 is facially unconstitutional as "no set of circumstances exists under which [the law] would be valid" and because "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citations omitted), *superseded by statute on other grounds*, Pub. L. No. 111–294, § 3(a), 124 Stat. 3178 (2010).

8.     But even if the law's prohibitions could constitutionally be applied to some individuals and entities—like those that are actually engaging in bad behavior, assuming they exist—no such application would cover Veterans Guardian given its scrupulous and transparent practices.

9.     This Court should accordingly issue a declaratory judgment holding S3292 unconstitutional and an injunction preventing enforcement of the law, along with any other necessary relief.

## THE PARTIES

### A.     Plaintiffs

10.     Plaintiff Veterans Guardian assists veterans in applying for the VA disability rating for which they qualify as a result of their honorable service to the nation.  Veterans Guardian is a North Carolina Limited Liability Company with a principal place of business in Pinehurst, North Carolina, and provides services to veterans in all fifty states, including New Jersey.

11.     Plaintiff John F. Rudman is a retired Colonel of the United States Army.  He lives in Marlton, New Jersey.  Colonel Rudman is a client of Veterans Guardian who, because of S3292, is unable to utilize Veterans Guardian's full services.

12.     Plaintiff Sergeant Andre Jesus Soto served for ten years in the U.S. Army.  He lives in Somerville, New Jersey.  Sergeant Soto is a client of Veterans Guardian who, because of S3292, is unable to utilize Veterans Guardian's full services.

### B.     Defendant

13.     Defendant Matthew Platkin is the Attorney General of New Jersey.  He is the State's chief law enforcement officer, and the New Jersey legislature granted him the authority to investigate alleged violations of New Jersey's Consumer Fraud Act and to assess penalties when violations are shown.  *See* N.J. Stat. Ann. §§ 56-8-3, -3.1.  In light of these duties, Attorney General Platkin has responsibility for enforcing S3292.  The Attorney General is headquartered at 25 Market Street,

Trenton, NJ, 08625, and has additional offices throughout New Jersey. Defendant Platkin is acting under color of State law for purposes of 42 U.S.C. § 1983 and is sued in his official capacity.

## JURISDICTION AND VENUE

14.    This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the case arises under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

15.    This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because Defendant's office is in this district and because a substantial part of the events giving rise to the claims occurred in this district.

## BACKGROUND

**A.    Statutory Background**

   *1.    Federal law and regulations*

17.    Congress and the VA have enacted rules and standards applicable to agents and attorneys who assist veterans with disability and other claims before the VA.

18.    Section 5901 of title 38 provides that "no individual may act as an agent or attorney in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary unless such individual has been recognized for such

purposes by the Secretary." 38 U.S.C. § 5901.  Section 5904 authorizes the Secretary of Veterans Affairs to recognize individuals for the purposes of acting as agents and attorneys and to set standards for the qualification of such individuals.  *Id.* § 5904(a). The same section holds that agents and attorneys may not charge fees for services provided before the date on which the agency issues an initial decision on a claim. *Id.* § 5904(c)(1) ("[A] fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a claimant is provided notice of the agency of original jurisdiction's initial decision.").

19.    The Secretary has exercised the authority provided by section 5904(a) to issue regulations on recognition of individuals and entities to act as agents and attorneys for veterans.  Those regulations provide that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose."  38 C.F.R. § 14.629.  The regulations set forth requirements for accreditation by agents and attorneys, as well as requirements for training, continuing education, and reporting.  *Id.*  They also implement the statute's prohibition on agents and attorneys charging fees prior to a notice of initial decision, *id.* § 14.636(c), and set standards and limits on the amount that can be charged for those activities, *id.* § 14.636(e).

20.    For purposes of the regulations, "[a]gent" is defined as "a person who has met the standards and qualifications outlined in § 14.629(b)," and "[a]ttorney" is defined as "a member in good standing of a State bar who has met the standards and qualifications in § 14.629(b)."  38 C.F.R. § 14.627(c)–(d).

> 2.    *New Jersey S3292*

21.    S3292 imposes restrictions beyond those established by federal law.

22.    In section 1.a.(1), S3292 provides that "[n]*o person* shall receive compensation for advising or assisting any individual with regard to any veterans benefits matter, except as permitted under federal law."  P.L. 2023, c. 150 § 1.a.(1) (emphasis added).  Section 1.a.(2) prohibits anyone from "receiv[ing] compensation for referring any individual to another person to advise or assist this individual with any veterans benefits matter."  *Id.* § 1.a.(2).  And section 1.a(4) blocks all persons from "receiv[ing] any compensation for any services rendered before the date on which a notice of disagreement is filed with respect to the individual's case."  *Id.* § 1.a.(4).

23.    "Veterans benefits matter" is defined to include "the preparation, presentation, or prosecution of any claim affecting any person who has filed or expressed an intent to file a claim for any benefit, program, service, commodity, function, or status, entitlement to which is determined under the laws and regulations administered by the United States Department of Veterans Affairs or the New Jersey

Department of Military and Veterans Affairs pertaining to veterans, their dependents, their survivors, and any other individual eligible for such benefits." P.L. 2023, c. 150 § 1(d).

24.    S3292 includes other prohibitions, including "guarantee[ing] either directly or by implication, that any individual is certain to receive specific veterans benefits or that any individual is certain to receive a specific level, percentage, or amount of veterans benefits," P.L. 2023, c. 150 § 1.a.(5); agreeing to accept compensation without a written agreement, *id.* § 1.a.(3); and charging "excessive or unreasonable fees," *id.* at 1.a.(6).

25.    S3292 also compels individuals and entities that receive compensation for their work with veterans to include in their contracts specific disclosure statements.  "[A]t the outset of the business relationship," the law states, an entity or individual must provide the following oral and written statement:

> This business is not sponsored by, or affiliated with, the United States Department of Veterans Affairs or the New Jersey Department of Military and Veterans Affairs, or any other federally chartered veterans service organization. Other organizations, including but not limited to the New Jersey Department of Military and Veterans Affairs, your local county veterans service agency, and other federally chartered veterans service organizations, may be able to provide you with this service free of charge. Products or services offered by this business are not necessarily endorsed by any of these organizations. You may qualify for other veterans benefits beyond the benefits for which you are receiving services here.

P.L. 2023, c. 150 § 1.b.(1).

26.     The law obligates entities and individuals to issue the same statement when advertising for compensated services and imposes corresponding records retention requirements.  *Id.* § 1.b.(1), (2).

27.     S3292 provides that violations of its provisions "constitute an unlawful practice and a violation of" New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et. seq*, which can result in monetary fines and other penalties.  *See* N.J. Rev. Stat. § 56:8-13 (establishing penalties "of not more than $10,000 for the first offense and not more than $20,000 for the second and each subsequent offense"); *id*. § 56:8-14.3 (providing for additional penalties for violations affecting senior citizens and persons with disabilities); *id*. § 56:8-19 (authorizing treble damages in actions by private parties).  The Attorney General is responsible for enforcing the Consumer Fraud Act, *see id.* §§ 56-15, -18, which also includes a private right of action, *id*. § 56:8-19.

### B.     Factual Background

#### 1.     *Veterans Guardian's Services*

28.     Veterans Guardian was founded in 2017 by U.S. Army veterans William Taylor and Scott Greenblatt.  It is staffed primarily by veterans, their family members, and spouses of active-duty military members.

29.     Veterans Guardian operates with the mission of helping veterans achieve the disability rating for which they qualify as a result of their honorable

service to the nation.  Veterans Guardian fulfills that mission by advising and assisting veterans with VA disability benefits claim submissions.

30.     Navigating the VA disability claims process can be difficult and confusing.  Without in-depth knowledge of how the claims process works and experience maneuvering through it, it can be difficult for veterans to pursue their claims successfully.  Though there are veterans service organizations, like Veterans of Foreign Wars ("VFW") and the American Legion, as well as some state agencies, that offer veterans free assistance with disability claims, those organizations' limited capacities and resources often preclude them from meeting the needs of all veterans eligible for benefits.  It is estimated that there is currently a backlog of hundreds of thousands of claims by veterans seeking disability assistance.

31.     Approximately seventy percent of Veterans Guardian clients were unsuccessful in obtaining or increasing their disability benefits when they used a free claims-assistance service.

32.     Veterans Guardian has the skill, expertise, and passion to help veterans obtain the disability benefits to which they are entitled.  Veterans Guardian's disability claims specialists receive extensive training on the VA disability claims process.  Individual specialists assist clients in developing claims by, among other things, reviewing relevant documents, helping develop supporting evidence, identifying claim strategies, and advising on how to prepare and submit a claim.

This allows veterans to submit their claims, confident in knowing that they have been advised of the process as well as the merits of their claims. Following decision on a client's claim, the specialists review the decision and identify post-decision strategies as applicable, including advising the veteran on how to submit a new claim for benefits.

33.    Since its inception, Veterans Guardian has helped over thirty thousand veterans increase their disability benefits, with an average benefits increase of $1,000 per month. 90% of Veterans Guardian clients achieve an increase in benefits within 85 days.

34.    Veterans Guardian has helped over 500 New Jersey veterans vindicate their rights before the VA.

35.    Veterans Guardian is transparent about all aspects of its services.

36.    Veterans Guardian enters into a Consulting Service Agreement with each of its clients. On the first page, Veterans Guardians discloses that free services are available to support veterans in filing VA disability benefits and that clients can achieve a positive outcome with those free services. It further states that clients can use Veterans Guardian's services in coordination with free services or other paid services and that Veterans Guardian is not a VA accredited agent and is not the client's representative before the VA. The agreement likewise makes clear that

Veterans Guardian is not a law firm, has no attorney on staff, and is not licensed to practice law in any jurisdiction.

37.    Additionally, Veterans Guardian requires every new client to sign a separate one-page document to acknowledge the availability of free services and the option to navigate the claims process on one's own.  The document further states that either of these options can be successful, that VG is not an accredited agent or attorney, and that its services are contingent fee based.

38.    In short, Veterans Guardian serves as a consultant to veterans as they navigate the claims process.  Veterans Guardian does not represent clients in that process and does not purport to be accredited by the VA.

39.    Veterans Guardian's compensation for its consulting services is also clearly laid out.  In the Consulting Service Agreement, Veterans Guardian explains that the company only charges a fee if the veteran's claim is successful.  If the client is awarded an increase in disability pay, the fee is the difference between the monthly amount of benefits received pre-claim and the amount the veteran will receive post-claim, multiplied by five.  Successful clients will receive increased benefits every month for the rest of their lives—Veterans Guardian's fee is equivalent to just five of those monthly increases.  The client may elect to pay the fee in one lump sum at a 10% discount, a five- or ten-month schedule, or elect a custom payment option with no interest or additional fees.

40.     If the veteran does not achieve higher pay (even if there is a change in disability *rating*), Veterans Guardian does not accept any fee from the veteran.

41.     Veterans Guardian's clients find its fee reasonable.

### 2. Veteran Plaintiffs

#### a. Colonel John F. Rudman

42.     Colonel Rudman is a retired Colonel of the U.S. Army.  He currently lives in Marlton, New Jersey.  Colonel Rudman served in the Army from 1972 to 1999.  He worked as a field artillery officer in numerous deployments around the world, including in South Korea, Germany, and Kuwait.  Colonel Rudman worked with nuclear weapons in South Korea and howitzers in Germany during the Cold War.  He served as the senior training and plans officer in Kuwait after Desert Storm. When he returned to New Jersey, Colonel Rudman served in the State's National Guard.

43.     In recognition of his excellent and steadfast service, Colonel Rudman received numerous honors, including a Legion of Merit, Meritorious Service Medal, Army Commendation Medal, and National Defense Service Medal.

44.     Harsh working conditions were a constant feature in Colonel Rudman's life during his years in the Army.  He regularly worked in below freezing weather or extreme heat, including in the desert during wartime.  Colonel Rudman suffered numerous injuries during his tours, including a broken foot and knee problems.

45.     As a result of his service-related injuries, Colonel Rudman receives disability benefits from the VA.  He has encountered difficulties collecting the benefits owed to him, including one instance where the VA reduced his benefits based on the mistaken understanding that a dependent was no longer in school.

46.     Colonel Rudman sought help from VFW to correct the errors with his disability benefits, but VFW did not have the resources necessary to effectively assist him.

47.     Colonel Rudman also sought to deal with the VA directly, with no success.

48.     In August 2019, Colonel Rudman received surgery on his left hip to address a service-related injury that left him in chronic pain and unable to function normally.  After the surgery, he submitted a claim, without assistance, for an increased disability rating.  The VA denied the claim on the grounds that the injury was not service connected.

49.     After that point, Colonel Rudman did not believe that he would ever receive the benefits to which he was entitled and had all but given up on the claims process.

50.     In the summer of 2023, Colonel Rudman met a former client of Veterans Guardian who told Colonel Rudman that Veterans Guardian had helped

him increase his disability rating.  The former client spoke highly of Veterans Guardian and encouraged Colonel Rudman to contact the Company.

51.    Colonel Rudman contacted Veterans Guardian in August 2023.  He found the Company to be responsive and professional.  A representative explained how Veterans Guardian could consult and advise Colonel Rudman as he prepared to submit a new claim for an increase in his disability rating.  Colonel Rudman was impressed with the level of service his representative provided.

52.    Colonel Rudman understood that Veterans Guardian would charge him a fee of five times the amount of any monthly increase to his disability benefits. Colonel Rudman believes this fee is reasonable.

53.    Soon after speaking with the representative, Colonel Rudman completed Veterans Guardian's initial questionnaire, which included questions necessary for Veterans Guardian to assess and advise Colonel Rudman about his claims, including questions regarding his service and his physical conditions.  Before Veterans Guardian could analyze his responses to the questionnaire, however, New Jersey enacted S3292, which prohibits Veterans Guardian from receiving compensation for the consulting services that Colonel Rudman intended to use.

b.  Sergeant Andre Jesus Soto

54.    Sergeant Soto served in the Army for ten years, between 2005 and 2015.

55.     He served in Iraq as a gunner and driver on 380 security missions and delivery missions, drove the head truck on recovery missions (picking up destroyed tanks and vehicles), and helped build multiple infantry compounds.  He also served in Afghanistan where he managed security for the generals' compound, including escorting the local population, conducting searches at the entry point, and controlling the entry point.

56.     Sergeant Soto received many service-related honors, including Army Achievement Medals, a Global War on Terrorism Service Medal, an Iraq Campaign Medal with a Campaign Star, and an Afghanistan Campaign Medal with two Campaign Stars.

57.     As a result of his service, Sergeant Soto suffers from post-traumatic stress disorder ("PTSD") and other conditions, including joint pain and hearing loss. He qualifies for VA disability benefits but was unsuccessful in obtaining them from the VA on his own.

58.     The process of applying for disability benefits was difficult, and Sergeant Soto did not receive any benefits until he sought help from private organizations.  On the recommendation of his brother-in-law (who is also a veteran), Sergeant Soto worked with a private company that helped him obtain benefits in 2019.

59.     However, the VA did not approve all of Sergeant Soto's conditions as service-connected, among them his PTSD.

60.     Sergeant Soto's brother-in-law then recommended Veterans Guardian.

61.     Sergeant Soto contacted Veterans Guardian in 2022.

62.     Veterans Guardian helped him apply for an increased disability rating based on the PTSD from which he suffers by guiding him through the application process, including in gathering medical documentation and other paperwork.

63.     Sergeant Soto's application prepared with Veterans Guardian's assistance succeeded, and the VA approved him for a higher disability rating and increased benefits.  He was very pleased with the help he received and recommended Veterans Guardian to others.

64.     This summer, Sergeant Soto began working with Veterans Guardian on a new claim for a ratings increase based on additional conditions that the VA did not previously approve.  He understands that Veterans Guardian charges a fee if a claim is successful in increasing the veteran's pay and thinks the fee of five times the amount of monthly increase is fair.

65.     When Sergeant Soto was one month into the process of preparing a new claim, Veterans Guardian told him of S3292 and that, while the Company would help with some minimal aspects of his claim, it would not be able to provide its full services because of the law.

3.      *Enactment and Impact of S3292*

66.     S3292 was introduced in late October 2022 and voted out of the Senate Military and Veterans Affairs Committee on January 30, 2023.  The Committee's consideration lasted approximately one minute, with no testimony or statements from members.  *Committee Meeting – January 30, 2023: Hearing Before S. Comm. On Mil. & Veterans' Affs.*, 220th Leg., 2d Ann. Sess. at 1:36:35–37:32 (N.J. 2023).[1] The same is true of the Budget Committee meeting on June 27, 2023.  *Assembly Budget Meeting: Hearing Before Comm. On Assemb. Budget*, 220th Leg., 2d Ann. Sess. at 11:45–13:04 (N.J. 2023).[2]  There was also no substantive discussion of the bill on June 30, 2023, when the Legislature voted in favor of the bill.

67.     Governor Murphy signed S3292 into law on August 25, 2023, and it took effect the same day.  *See* P.L. 2023, c. 150 § 2.

68.     S3292 prevents Veterans Guardian from doing business in New Jersey.

69.     Immediately upon the law's passage, Veterans Guardian stopped accepting new clients in New Jersey.  It will not accept any payment from New Jersey clients with claims presently in process if a claim is successful.  Veterans

---

[1]     *Available at* https://www.njleg.state.nj.us/archived-media/2022/SMV-meeting-list/media-player?committee=SMV&agendaDate=2023-01-30-10:00:00&agendaType=M&av=A.

[2]     *Available at* https://www.njleg.state.nj.us/archived-media/2022/ABU-meeting-list/media-player?committee=ABU&agendaDate=2023-06-27-14:00:00&agendaType=M&av=V.

Guardian has refunded payments made by three clients that were remitted after the law's enactment.  For New Jersey clients the Company is already assisting, it will endeavor not to leave them in a disadvantageous position and thus may provide assistance with very minimal aspects of their claims without charging a fee. However, Veterans Guardian will not be able to provide its full services to any clients in New Jersey.  In short, S3292 devastates Veterans Guardian's business in New Jersey.

70.    S3292 severely limits the ability of New Jersey veterans, including Colonel Rudman and Sergeant Soto, to choose how to prepare and pursue their claims for VA disability benefits.

71.    As a result of S3292, Colonel Rudman cannot continue using the full services of Veterans Guardian, which he believes is the best, and likely only, entity with the ability to advise him on increasing his disability benefits rating.  Based on his previous experience with VFW, he does not believe that VFW, or other veterans service organizations, have the expertise or resources to assist him.

72.    Sergeant Soto is also precluded from working with Veterans Guardian. In his experience, the VA was unhelpful, and he does not believe that veterans service organizations have the expertise to provide services comparable to what he received from Veterans Guardian.  He wants to continue working with Veterans

Guardian in applying for an increased disability rating because the Company was effective in helping him previously.  S3292 makes that impossible.

73.    Because of S3292, the Veteran Plaintiffs risk not obtaining the disability benefits to which they are entitled.

## S3292 UNLAWFULLY INFRINGES PLAINTIFFS' FIRST AMENDMENT RIGHTS

### A.    Freedom of Speech

74.    The First Amendment's Free Speech Clause prohibits laws that regulate protected speech based on its content unless they serve a compelling state interest and are narrowly tailored to advance that interest.

75.    S3292 is an unlawful content-based restriction because, without a compelling interest or narrow tailoring, it prohibits Veterans Guardian from receiving compensation for "advising or assisting" with any veterans benefits matter, for "referring any individual to another person to advise or assist . . . with any veterans benefits matter[,]" and for "any services rendered before the date on which a notice of disagreement is filed with respect to the individual's case."  P.L. 2023, c. 150 §1.a.(1), (2), (4).

76.    In these respects, S3292 exceeds the bounds of federal law, which limits its restrictions to individuals and entities acting as "agent[s] or attorney[s]."  *See* 38 U.S.C. § 5901 ("No individual may act *as an agent or attorney* in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary

unless such individual has been recognized for such purposes by the Secretary." (emphasis added)); § 5904(c)(1) ("[A] fee may not be charged, allowed, or paid *for services of agents and attorneys* with respect to services provided before the date on which a claimant is provided notice of the agency of original jurisdiction's initial decision." (emphasis added)); *see also, e.g.*, 38 C.F.R. § 14.636(c)(1)(i) ("*Agents and attorneys* may charge claimants or appellants for representation provided after an agency of original jurisdiction has issued notice of an initial decision on the claim." (emphasis added)).

77.    S3292 erases that distinction and in its place erects a comprehensive barrier that blocks anyone not expressly singled out by the VA for accreditation from accepting compensation for assisting veterans with their claims.

78.    S3292 is thus directed at speech—advice or assistance—on a particular "topic or subject matter"—veterans benefits matters. *See City of Austin v. Reagan Nat'l Advert. of Austin*, 142 S. Ct. 1464, 1472 (2022) (recognizing that regulations discriminating based on topic or subject matter are content based). S3292 is also aimed at "particular speakers" because it singles out for disparate treatment unaccredited individuals and entities who provide services for compensation. *Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2341 (2020).

79.    Such regulations that discriminate based on "topic[s] or subject matter" constitute content-based restrictions subject to strict scrutiny. *Reagan Nat'l Advert.*

*of Austin*, 142 S. Ct. at 1475 (acknowledging the continuing vitality of "precedents recognizing examples of topic or subject-matter discrimination as content based").

80.     S3292 not only infringes Veterans Guardian's right to speak, it infringes the rights of Colonel Rudman and Sergeant Soto, and other veterans who wish to engage professional assistance with their disability benefits claims.

81.     First, the law prevents Colonel Rudman and Sergeant Soto from communicating with the persons of their choice in preparing their disability claims submission.

82.     Second, S3292 infringes the Veteran Plaintiffs' right to receive information from Veterans Guardian. *See Stanley*, 394 U.S. at 564 ("It is now well established that the Constitution protects the right to receive information and ideas.").

**B.     Freedom to Petition the Government and to Associate for the Purpose of Petitioning**

83.     "The right to petition . . . administrative bodies [] is protected by the first amendment." *Brookins v. O'Bannon*, 699 F.2d 648, 652 (3d. Cir. 1983) (citation omitted).  And because "[a]n individual's freedom to . . . petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were . . . also guaranteed[,]" *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (citation omitted), "[t]he freedom to associate for the purpose of

exercising the right of petition is protected conduct as well," *Brookins*, 699 F.2d at 652 (citing *NAACP v. Button*, 371 U.S. 415, 430 (1963)).  "Infringements on that right may be justified [only] by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623 (citing cases).

84.    Colonel Rudman and Sergeant Soto have a right to petition the VA for disability benefits.  S3292 burdens that right by precluding the Veteran Plaintiffs from working with Veterans Guardian and thus impeding their ability to effectively petition the VA regarding their benefits.

85.    The law also infringes their corresponding associational right.  Colonel Rudman and Sergeant Soto want to discuss, receive advice and instruction, analyze, strategize and otherwise engage with Veterans Guardian in service of their claims. S3292 makes that impossible.

### C.    S3292 Fails Strict and Intermediate Scrutiny

86.    S3292's content-based prohibition on speech and infringement on the Veteran Plaintiffs' petition and association rights is not narrowly tailored to serve a compelling government interest.

87.    Although apparently motivated to deter fraud and protect veterans, New Jersey cannot establish that the "harms [underlying the law] are real, not merely

conjectural." *Wilmoth v. Sec'y of New Jersey*, 731 F. App'x. 97, 103–04 (3d Cir. 2018) (internal citations and quotation marks omitted).

88.    Even if New Jersey could adequately articulate or justify its interest in protecting veterans, it cannot show that less restrictive alternatives—such as the existing consumer-fraud protections and existing *federal* regulations—are inadequate to address that interest. *See Village of Schaumburg*, 444 U.S. at 637 ("Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly." (citations omitted)).

89.    Rather than carefully crafting its law to avoid burdening speech, New Jersey has broadly (and blindly) prohibited compensated "advice and assistance" from all unaccredited entities and individuals and any compensated services rendered before a notice of disagreement is filed. Responsible industry participants like Veterans Guardian are lumped together (and shut out of the industry) along with companies that might not be so scrupulous. *See Village of Schaumburg*, 444 U.S. at 637 (noting that government may not "lump" good actors with bad "and refuse to employ more precise measures to separate one kind from the other").

90.    Even if subjected to intermediate scrutiny, S3292 fails because New Jersey cannot show that "the recited harms are real" and "the means [it has] chosen" to address them do not "burden substantially more speech than is necessary." *Turner Broad., Inc.*, 512 U.S. at 622, 664 (citation omitted).

### D.   S3292 Is Unconstitutional Facially and As Applied to Plaintiffs

91.   Typically, a plaintiff making a facial challenge to a statute must establish "that no set of circumstances exists in which [the law] would be valid" or "that the statute lacks any plainly legitimate sweep." *Stevens*, 559 U.S. at 472 (2010) (internal quotation marks and citation omitted). "In the First Amendment context, however, [the Supreme Court has] recognize[d] a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (internal quotation marks and citation omitted).

92.   S3292 fails under both theories. Because the State cannot show that S3292's complete prohibitions on "advising and assisting" for compensation constitute the least restrictive means of accomplishing its purported state interest, the law fails strict scrutiny (and also fails intermediate scrutiny) and there is no set of circumstances in which the law could be constitutionally enforced. For the same reason, the unconstitutional application of S3292's prohibitions far outweighs whatever "legitimate sweep" the law might have (if any).

93.   Even if the law's prohibitions could constitutionally be applied to some individuals and entities—like those that are actually engaged in bad behavior—no such application would cover Veterans Guardian. Veterans Guardian takes pains to be fully transparent with its clients so all have a clear understanding at the outset of

the working relationship. There is no deception, misdirection, fraud, or even surprises in the work Veterans Guardian performs with its clients.

94. For that reason, S3292 is unconstitutional as applied to Veterans Guardian and the Veteran Plaintiffs insofar as they intend to work with Veterans Guardian to pursue their claims.

**CAUSES OF ACTION**

**COUNT ONE**
**S3292 VIOLATES THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION BY UNLAWFULLY RESTRICTING SPEECH BASED ON CONTENT (ALL PLAINTIFFS AGAINST DEFENDANT)**

95. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

96. S3292 regulates speech based on content because it targets communications on a particular topic—"veterans benefit matter[s]"—and by particular speakers—individuals and entities who provide assistance with disability benefits claims for compensation and are not accredited by the VA.

97. Because Veterans Guardian's business activities depend on speech, S3292 infringes the Company's First Amendment rights.

98. By restricting veterans from discussing their claims and obtaining advice or assistance from Veterans Guardian, S3292 also infringes Colonel

Rudman's and Sergeant Soto's First Amendment right to speak as well as their "right to receive information and ideas." *Stanley*, 394 U.S. at 564.

99.    S3292's content-based prohibition on speech is not narrowly tailored to serve a compelling government interest.

100.    Even if subject to intermediate scrutiny, S3292 fails because the State cannot establish that the recited harms are real and the means it has chosen to pursue its ends do not burden more speech than is necessary.

101.    In addition to constitutional injuries, S3292 devastates Veterans Guardian's business in New Jersey and impairs the Veteran Plaintiffs' ability to obtain the disability benefits to which they are entitled.

**COUNT TWO**
**S3292 VIOLATES THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION BY UNLAWFULLY RESTRICTING THE FREEDOM TO PETITION THE GOVERNMENT FOR REDRESS AND THE CORRESPONDING FREEDOM OF ASSOCIATION FOR THAT PURPOSE**
**(VETERAN PLAINTIFFS AGAINST DEFENDANT)**

102.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 101 as if fully set forth herein.

103.    The First Amendment protects the right to petition a government agency for redress of grievances and correspondingly protects the right to associate for that purpose.

104.  S3292 infringes Colonel Rudman's and Sergeant Soto's right to petition the government by depriving them of their adviser of choice and likewise infringes their right to associate with their adviser of choice for purposes of petitioning the government.

105.  S3292 is not narrowly tailored to serve a compelling government interest.

106.  S3292 therefore violates the First Amendment rights of Colonel Rudman and Sergeant Soto.

107.  In addition to constitutional injuries, S3292 impairs the Veteran Plaintiffs' ability to obtain the disability benefits to which they are entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

i.  Declare that S3292 violates Plaintiffs' First Amendment rights to speak, to petition the government, and to associate for the purposes of petitioning the government for redress;

ii.  Preliminarily and permanently enjoin Defendant, and his employees, agents, and successors in office from enforcing S3292;

iii.  Award Plaintiffs their costs and expenses, including reasonable attorneys' fees; and

iv.  Grant such other relief as the Court deems just and proper.

Dated: September 25, 2023                    Respectfully submitted,

                                             */s/* Stephen M. Baldini
                                             Stephen M. Baldini
                                             NJ Bar 0410411990
                                             Akin Gump Strauss Hauer & Feld LLP
                                             One Bryant Park
                                             44th Floor
                                             New York, NY 10036
                                             Email: sbaldini@akingump.com

                                             Mark Herring*
                                             Anthony Pierce*
                                             Martine Cicconi*
                                             James Tysse*
                                             Caroline Wolverton*
                                             David Bethea*
                                             Aleena Ijaz*
                                             Akin Gump Strauss Hauer & Feld LLP
                                             Robert S. Strauss Tower
                                             2001 K Street N.W.
                                             Washington, DC 20006
                                             Tel.: 202-887-4000
                                             Email: mherring@akingump.com
                                                    apierce@akingump.com
                                                    mcicconi@akingump.com
                                                    jtysse@akingump.com
                                                    cwolverton@akingump.com
                                                    dbethea@akingump.com
                                                    aijaz@akingump.com
                                             *Attorneys for the Plaintiffs*

                                             *motions to appear pro hac vice
                                             pending*

## <u>VERIFICATION PURSUANT TO LOCAL RULE 11.2</u>

The undersigned hereby certifies that to the best of my knowledge, this matter is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.  I further certify that I have read the foregoing Verified Complaint and know the contents thereof.  The statements contained in the Verified Complaint are true to the best of my personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

<u>*/s/* Stephen M. Baldini</u>
Stephen M. Baldini, N.J. Bar No. 0410411990