**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**Trenton Division**

| | |
|---|---|
| VETERANS GUARDIAN VA CLAIM CONSULTING, et al., <br><br> *Plaintiffs,* <br><br> *v.* <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of New Jersey. <br><br> *Defendant.* | **Case No. 3:23-cv-20660-MAS-JBD** <br><br> **Judge Michael A. Shipp** <br> **Magistrate Judge J. Brendan Day** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**

Stephen M. Baldini
N.J. Bar No. 0410411990
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
44th Floor
New York, NY 10036
Tel: (212) 872-1000

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................1

BACKGROUND ..............................................................................................2

      A.    Statutory Framework ...............................................................2
            1.    Federal Law and Regulations .................................2
            2.    New Jersey S3292 .................................................4
      B.    Factual Background ..................................................................6
            1.    Veterans Guardian's Services ................................6
            2.    Colonel John F. Rudman and Sergeant Andre Jesus Soto .............................................................9
            3.    Enactment of New Jersey S3292 ..........................14
            4.    Impact of New Jersey S3292 .................................15

ARGUMENT .................................................................................................16

    I.    LEGAL STANDARD. ........................................................16
    II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT S3292 INFRINGES THEIR FIRST AMENDMENT RIGHTS. .................................17
      A.    S3292 Is an Unlawful Content-Based Restriction on Speech. ..................................................................17
            1.    S3292 Is Subject to Strict Scrutiny. ....................17
            2.    S3292 Burdens Veterans Guardian's Speech. ......20
            3.    S3292 Burdens Colonel Rudman's and Sergeant Soto's Speech. ....................................................24
      B.    S3292 Unlawfully Restricts Colonel Rudman's and Sergeant Soto's Freedom to Petition the Government for Redress and to Associate to Accomplish That End. ........26
      C.    S3292 Cannot Survive Strict or Even Intermediate Scrutiny. .................................................................28
      D.    Plaintiffs' First Amendment Challenge Is Likely to Succeed on a Facial and As-Applied Basis. ..........32
    III.    THE OTHER PRELIMINARY INJUNCTION FACTORS WEIGH IN PLAINTIFFS' FAVOR. ...............................34
      A.    Plaintiffs Will Suffer Immediate and Irreparable Harm If the New Jersey Law is Not Enjoined. ...................34
      B.    The Balance of Equities and Public Interest Weigh in Plaintiffs' Favor. .............................................36

CONCLUSION..............................................................................................38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004) ............................................................................29

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  140 S. Ct. 2335 (2020) ...............................................17, 18, 20, 24

*Billups v. City of Charleston*,
  961 F.3d 673 (4th Cir. 2020) ..........................................................24

*Brookins v. O'Bannon*,
  699 F.2d 648 (3d. Cir. 1983) .....................................................26, 27

*City of Austin v. Reagan Nat'l Advert. of Austin*,
  142 S. Ct. 1464 (2022) .....................................................................20

*Doe ex rel. Doe v. Governor of New Jersey*,
  783 F.3d 150 (3d Cir. 2015) ............................................................26

*Elrod v. Burns*,
  427 U.S. 347 (1976) ..........................................................................34

*B.H. ex rel. Hawk v. Easton Sch. Dist.*,
  725 F.3d 293 (3d Cir. 2013) ............................................................17

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) ................................................................20, 21, 22

*Issa v. Sch. Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017) ......................................................16, 17

*Kentucky v. Graham*,
  473 U.S. 159 (1985) .....................................................................35, 36

*King v. Governor of New Jersey*,
  767 F.3d 216 (3d Cir. 2014) ...........................................21, 22, 23, 32

*Kreimer v. Bureau of Police for Town of Morrison*,
  958 F.2d 1242 (3d Cir. 1992) ..........................................................25

*Lawyers for Fair Reciprocal Admission v. United States*,
  2023 WL 145530 (D.N.J. Jan. 10, 2023) ............................................................23

*Mirabella v. Villard*,
  853 F.3d 641 (3d. Cir. 2017) ...................................................................28, 29

*NAACP v. Button*,
  371 U.S. 415 (1963) .............................................................................27, 30, 31

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  138 S. Ct. 2361 (2018) .............................................................................21, 22

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................36

*Pac. Coast Horseshoeing Sch. v. Kirchmeyer*,
  961 F.3d 1062 (9th Cir. 2020) ...................................................................25, 26

*Pitt News v. Pappert*,
  379 F.3d 96 (3d Cir. 2004) ...........................................................................23

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) .........................................................................26, 27, 28, 29

*Schrader v. Dist. Att'y of York Cnty.*,
  74 F.4th 120 (3d Cir. 2023) .....................................................................*passim*

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) .............................................................................17, 21

*Stanley v. Georgia*,
  394 U.S. 557 (1969) ................................................................................25

*Startzell v. City of Philadelphia*,
  533 F.3d 183 (3d Cir. 2008) .....................................................................29, 30

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994) .............................................................................30, 32

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*,
  389 U.S. 217 (1967) ................................................................................28

*United States v. Stevens,*
    559 U.S. 460 (2010) ..................................................................33

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) ..................................................................24

*Village of Schaumburg v. Citizens for a Better Env't,*
    444 U.S. 620 (1980) ..............................................................30, 31

*Wilmoth v. Sec'y of New Jersey,*
    731 F. App'x 97 (3d Cir. 2018) ...............................................29, 30

**Statutes**

38 U.S.C.

    § 5901 ...............................................................................2, 3, 18

    § 5904 .............................................................................3, 18, 19

N.J. Rev. Stat.

    § 56:8-13 .................................................................................5

    § 56:8-14.3 ..............................................................................5

    § 56:8-19 .................................................................................5

    § 56-15 ...................................................................................5

    § 56-18 ...................................................................................5

N.J. Stat. Ann. § 56:8-2 *et. seq* ...................................................5

New Jersey Senate Bill 3292 ("S3292"), P.L. 2023, c. 150 ...........................*passim*

**Other Authorities**

38 C.F.R.

    § 14.627 .................................................................................3, 4

    § 14.629 .................................................................................3

    § 14.636 .................................................................................3, 19

*Assembly Budget Meeting: Hearing Before Comm. On Assemb. Budget*, 220th Leg., (2023), Reg. Sess. 2022–2023 (N.J. 2023) ........................14

*Committee Meeting – January 30, 2023: Hearing Before S. Comm. On Mil. & Veterans' Affs.*, 220th Leg., 2d Ann. Sess. at 1:36:35–37:32 (N.J. 2023) ............................................................14

Press Release, *Governor Murphy Signs Legislation to Protect Veterans and Their Families When Seeking Assistance with Veterans' Benefits*...........................................................30

**INTRODUCTION**

New Jersey Senate Bill 3292 ("S3292"), P.L. 2023, c. 150, violates the First Amendment rights of Plaintiffs Veterans Guardian VA Claim Consulting, LLC ("Veterans Guardian" or the "Company"), Colonel John F. Rudman, and Sergeant Andre Jesus Soto.  Signed into law on August 25, 2023, S3292 prohibits any individual or entity from receiving compensation for advising or assisting veterans with claims before the U.S. Veterans Administration ("VA"), except in narrow circumstances that do not apply here.  Although ostensibly enacted to prevent fraud and protect veterans, the law regulates indiscriminately and overbroadly, lumps good actors with bad, and is not narrowly tailored to further any compelling interest.  As a result, S3292 unlawfully infringes Plaintiffs' rights to speak, to petition the government for redress of grievances, and to associate for that purpose.  Preliminary injunctive relief is warranted.

Plaintiff Veterans Guardian is owned and operated by veterans.  Its mission is to help veterans obtain the disability benefits owed them as a result of their honorable service to the nation.  The Company charges a fee for its services only if a client succeeds in obtaining an increased disability rating and increased disability benefits for their initial claim.  Veterans Guardian is fully transparent about its fee structure and the types of assistance it offers, and boasts a 90% record of success for its clients.  Plaintiffs Colonel Rudman and Sergeant Soto want to work with Veterans Guardian

to pursue increases in their disability ratings based on the Company's reputation and the sophistication and expertise they personally observed.

S3292 law makes that impossible. Because of the new law, Veterans Guardian is unable to conduct business in New Jersey and cannot assist Colonel Rudman, Sergeant Soto, or any other New Jersey veterans with their claims. Accordingly, all Plaintiffs have been deprived of their First Amendment rights; Veterans Guardian faces the complete loss of its New Jersey business; and Colonel Rudman and Sergeant Soto risk not receiving benefits to which they are entitled—all harms that are irreparable because (among other reasons) the State is immune from damages.

Because Plaintiffs are likely to succeed on the merits of their First Amendment challenge, the law imposes irreparable harm, and the public interest and balance of equities weigh in Plaintiffs' favor, this Court should enjoin S3292.

## BACKGROUND

### A.   Statutory Framework

#### 1. Federal Law and Regulations

Congress and the VA have enacted rules and standards applicable to agents and attorneys who assist veterans with disability and other claims before the VA.

Section 5901 of title 38 provides that "no individual may act as an agent or attorney in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary unless such individual has been recognized for such

2

purposes by the Secretary." 38 U.S.C. § 5901.  Section 5904 authorizes the Secretary of Veterans Affairs to recognize individuals for the purposes of acting as agents and attorneys and to set standards for the qualification of such individuals.  *Id.* § 5904(a). The same section holds that agents and attorneys may not charge fees for services provided before the date on which the agency issues an initial decision on a claim. *Id.* § 5904(c)(1) ("[A] fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a claimant is provided notice of the agency of original jurisdiction's initial decision.").

The Secretary has exercised the authority provided by section 5904(a) to issue regulations relating to the recognition of individuals and entities to act as agents and attorneys for veterans.  Those regulations provide that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose."  38 C.F.R. § 14.629(b)(1).  The regulations set forth requirements for accreditation by agents and attorneys, as well as requirements for training, continuing education, and reporting.  *Id.*  They also implement the statute's prohibition on agents and attorneys charging fees prior to a notice of initial decision, *id.* § 14.636(c), and set standards and limits on the amount that can be charged for those activities, *id.* § 14.636(e).  The regulations define "[a]gent" as "a person who has met the standards and qualifications outlined in § 14.629(b)" and "[a]ttorney" as

3

"a member in good standing of a State bar who has met the standards and qualifications in § 14.629(b)." *Id.* § 14.627(c)–(d).[1]

### 2. New Jersey S3292

S3292 imposes restrictions beyond those established by federal law.

In section 1.a.(1), S3292 provides that "*no person* shall receive compensation for advising or assisting any individual with regard to any veterans benefits matter, except as permitted under federal law." P.L. 2023, c. 150 § 1.a.(1) (emphasis added). Section 1.a.(2) prohibits anyone from "receiv[ing] compensation for referring any individual to another person to advise or assist this individual with any veterans benefits matter." *Id.* § 1.a.(2). And section 1.a.(4) blocks all persons from "receiv[ing] any compensation for any services rendered before the date on which a notice of disagreement is filed with respect to the individual's case." *Id.* § 1.a.(4). The law defines "[v]eterans benefits matter" to include "the preparation, presentation, or prosecution of any claim affecting any person who has filed or expressed an intent to file a claim for any benefit, program, service, commodity, function, or status, entitlement to which is determined under the laws and regulations administered by the United States Department of Veterans Affairs or the New Jersey

---

[1] Chapter 59 of title 38 does not define agent or attorney for purposes of the statute.

4

Department of Military and Veterans Affairs pertaining to veterans, their dependents, their survivors, and any other individual eligible for such benefits." *Id.* § 1.d.

S3292 includes other prohibitions, including "guarantee[ing], either directly or by implication, that any individual is certain to receive specific veterans benefits or that any individual is certain to receive a specific level, percentage, or amount of veterans benefits," P.L. 2023, c. 150 § 1.a.(5); agreeing to accept compensation without a written agreement, *id.* § 1.a.(3); and charging "excessive or unreasonable fees[,]" *id.* at 1.a.(6). S3292 also compels individuals and entities that receive compensation for their work with veterans to include in their solicitations and contracts specific disclosure statements. *Id.* § 1.b.(1)–(2).

S3292 provides that violations of its provisions "constitute an unlawful practice and a violation of" New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et. seq*, which can result in monetary fines and other penalties. *See* N.J. Rev. Stat. § 56:8-13 (establishing penalties "of not more than $10,000 for the first offense and not more than $20,000 for the second and each subsequent offense"); *id.* § 56:8-14.3 (providing for additional penalties for violations affecting senior citizens and persons with disabilities); *id.* § 56:8-19 (authorizing treble damages in actions by private parties). The Attorney General is responsible for enforcing the Consumer Fraud Act, *see id.* §§ 56-15, -18, which also includes a private right of action, *id.* § 56:8-19.

## B.  Factual Background

### 1.  *Veterans Guardian's Services*

Veterans Guardian was founded by U.S. Army veterans Scott Greenblatt and William Taylor (both Lieutenant Colonels, U.S. Army, retired) in 2017 with the mission of helping veterans achieve the disability rating for which they qualify as a result of their honorable service to the nation.  Ex, 1, Decl. of W. Taylor ("Taylor Decl.") ¶ 2.  Staffed by veterans, their family members, and spouses of active-duty military members, Veterans Guardian assists veterans with VA disability benefits claim submissions across the country.  To date, Veterans Guardian has helped over 30,000 veterans increase their disability benefits, with an average benefits increase of $1,000 per month.  *Id.* ¶ 6.  90% of Veterans Guardian clients achieve an increase in benefits in an average of 85 days.  *Id.* ¶ 7.  In New Jersey alone, Veterans Guardian has helped 500 veterans vindicate their rights before the VA.  *Id.*

The process for claiming disability benefits from the VA is cumbersome and confusing.  Taylor Decl. ¶ 8; Ex. 2, Decl. of J. Rudman ("Rudman Decl.") ¶ 6; Ex. 3, Decl. of A. Soto ("Soto Decl.") ¶ 4.  Without in-depth knowledge of how the VA's claims process works and experience maneuvering through it, it can be difficult for veterans to pursue their claims successfully.  Taylor Decl. ¶ 8; *see also* Rudman Decl. ¶ 6; Soto Decl. ¶ 4.  While veterans service organizations ("VSOs") like Veterans of Foreign Wars ("VFW") and the American Legion, as well as some state agencies,

offer veterans free assistance with disability claims, those organizations' limited capacities and resource constraints preclude them from meeting veterans' needs in many cases.  Taylor Decl. ¶ 9; *see also* Rudman Decl. ¶ 5; Soto Decl. ¶ 4.  In fact, approximately 70% of Veterans Guardian clients have used a free claims-assistance service in the past without success (or without complete success).  Taylor Decl. ¶ 10.

The reason veterans achieve better results with Veterans Guardian is the skill, expertise, and passion the Company brings to the process.  Veterans Guardian's disability claims specialists receive extensive training on the VA disability claims process from start to finish.  Taylor Decl. ¶ 11.  Individual specialists assist clients in developing claims by, among other things, reviewing relevant documents, helping develop supporting evidence, identifying claim strategies, and assisting with preparing and submitting a claim.  *Id.*  Following decision on a client's claim, the specialists review the decision and identify post-decision strategies as applicable, including submitting a new claim for benefits.  *Id.*

In terms of compensation, Veterans Guardian takes on all of the risk associated with a claim upfront and charges a fee only if the veteran's claim is successful. Taylor Decl. ¶ 12; Taylor Decl. Ex. A ("Taylor Ex. A") ¶¶ 02(a)(vi), 03(a) (Consulting Services Agreement).  When a client secures an increase in their disability pay, the fee is the difference between the amount of benefits received per month pre-claim and the amount post-claim, multiplied by five.  *Id.*; Taylor Ex. A

¶ 03(b).  As a result of the increased disability pay, the veteran will receive additional benefits every month for the rest of their life—Veterans Guardian's fee is equivalent to just five of those monthly increases.  The veteran may elect to pay the fee in one lump sum at a 10% discount, a five- or ten-month schedule, or elect a custom payment option with no interest or additional fees.  Taylor Ex. A ¶ 03(d).  If a Veterans Guardian client is not awarded increased disability pay (even if there is an increased disability *rating*), Veterans Guardian does not take a penny.  Taylor Decl. ¶ 14.

Veterans Guardian is transparent about this fee structure, along with all other aspects of its services.  Its agreement with clients states prominently on the first page that free services through VSOs are available to support veterans in seeking disability benefits, and that clients can achieve a positive outcome with those free services.  Taylor Decl. ¶ 18; Taylor Ex. A ¶ 01(d).  It further states that clients can use Veterans Guardian's services in coordination with free services or other paid services.  Taylor Decl. ¶ 18; Taylor Ex. A ¶ 01(d); *see also* Taylor Ex. A ¶ 02(b)(iv).  The consulting services agreement also states prominently on the first page (as well as elsewhere) that Veterans Guardian is not accredited by the VA and is not the client's representative before the agency.  Taylor Decl.¶ 19; Taylor Ex. A ¶¶ 01(e), 02(b)(v).  The agreement makes clear that Veterans Guardian is not a law firm, has no attorney on staff, and is not licensed to practice law in any jurisdiction.  Taylor

Decl. ¶ 19; Taylor Ex. A ¶ 02(c)(vi).  Veterans Guardian also requires every new client to sign a separate one-page document acknowledging the availability of free services and the option to navigate the claims process on one's own.  Taylor Decl. ¶ 17; Taylor Ex. B (Veterans Guardian Proclamation).  The document further states that either of these options can be successful, that Veterans Guardian is not an accredited agent or attorney, and that its services are contingent fee based.  *Id.*

In short, Veterans Guardian serves as a consultant to veterans as they navigate the claims process.  Veterans Guardian does not represent clients in that process and does not purport to be accredited by the VA.  Veterans Guardian is transparent with its clients about these and all other relevant facts about its services.

### 2. *Colonel John F. Rudman and Sergeant Andre Jesus Soto*

a.  Plaintiff Colonel John Rudman lives in Marlton, New Jersey.  Rudman Decl. ¶ 1.  Colonel Rudman served in the U.S. Army for nearly three decades, from 1972 until 1999.  *Id.* ¶ 2.  He worked as a field artillery officer in numerous deployments around the world, including in South Korea, Germany, and Kuwait.  *Id.* ¶ 2.  Colonel Rudman worked with nuclear weapons in South Korea and howitzers in Germany during the Cold War.  *Id.*  He served as the senior training and plans officer in Kuwait after Desert Storm.  *Id.*  Colonel Rudman received numerous service-related honors, including the Legion of Merit, Meritorious Service Medal,

Army Commendation Medal, and National Defense Service Medal.  *Id.*  When he returned to New Jersey, Colonel Rudman served in the State's National Guard.  *Id.*

Harsh working conditions were a constant feature in Colonel Rudman's life during his years in the Army.  Rudman Decl. ¶ 3.  He regularly worked in below freezing weather or extreme heat, including in the desert during wartime.  *Id.*  Colonel Rudman suffered numerous injuries during his tours, including a broken foot and knee problems.  *Id.*

As a result of his service-related injuries, Colonel Rudman receives disability benefits administered by the VA.  Rudman Decl. ¶ 4.  Once, Colonel Rudman sought help from VFW to correct errors in his benefits calculation caused by the VA's mistaken belief that a dependent child was no longer attending school.  *Id.* ¶ 5.  VFW attempted to assist him, but lacked the resources to be effective.  *Id.*  Colonel Rudman's attempts to navigate the VA's processes on his own also failed, and he ultimately relied on his Congressman at the time to fix the issue.  *Id.* ¶ 6.

In August 2019, Colonel Rudman had surgery for a service-connected hip injury, which left him unable to function normally and with chronic pain.  Rudman Decl. ¶ 7.  Accordingly, Colonel Rudman submitted a claim for an increased disability rating.  *Id.*  That claim was denied because the agency did not accept Colonel Rudman's declaration that the injury was service connected (after having initially approved the claim, but for the wrong hip).  *Id.*  Based on his experiences

with the VA and VFW, Colonel Rudman believed that he would never be able to successfully navigate the claims process.  *Id.* ¶ 8.  At that point, Colonel Rudman had all but given up on the idea that he would obtain the benefits increase to which he was entitled.  *Id.*

Over the past summer, while touring national parks, Colonel Rudman met a Park Ranger who is a fellow veteran and also a former client of Veterans Guardian. Rudman Decl. ¶ 8.  On his own accord, the Ranger described to Colonel Rudman how Veterans Guardian helped him obtain an increase in disability benefits.  He recommended that Colonel Rudman contact the Company for help with his own claims.  *Id.*

Colonel Rudman took that advice and contacted Veterans Guardian in early August 2023.  Rudman Decl. ¶ 9.  Colonel Rudman found the staff to be immediately responsive and professional.  *Id.*  They explained clearly how they could help Colonel Rudman to submit a new claim for an increased disability rating based on his hip injury and other service-connected conditions.  *Id.*  Staff also explained that, if his claim succeeded, Veterans Guardian would charge a fee equivalent to the monthly increase in benefits times five.  *Id.* ¶ 11.  Veterans Guardian gave Colonel Rudman a questionnaire to complete and walked him through the details of his service and current physical conditions necessary for his claim.  *Id.* ¶ 9.

11

Colonel Rudman was impressed with Veterans Guardian's competence and found its fee to be reasonable despite the availability of free alternatives. Rudman Decl. ¶ 12. Having worked with VFW previously and also having attempted to deal directly with the VA, Colonel Rudman did not think VSOs had the resources to help him and did not expect assistance from the VA. *Id.* Colonel Rudman believed that working with Veterans Guardian would give him the best, and possibly only, opportunity to achieve a successful result. *Id.*

b.     Plaintiff Sergeant Andre Jesus Soto lives in Somerville, New Jersey. Soto Decl. ¶ 1. Sergeant Soto served in the Army for ten years, between 2005 and 2015. *Id.* ¶ 2. He worked in Iraq as a gunner and driver on 380 security missions and delivery missions, drove the head truck on recovery missions (picking up destroyed tanks and vehicles), and helped build multiple infantry compounds. *Id.* He also served in Afghanistan where he managed security for the generals' compound, including escorting the local population, conducting searches at the entry point, and controlling the entry point. *Id.* Sergeant Soto received many service-related honors, including Army Achievement Medals, a Global War on Terrorism Service Medal, an Iraq Campaign Medal with a Campaign Star, and an Afghanistan Campaign Medal with two Campaign Stars. *Id.*

As a result of his service, Sergeant Soto suffers from post-traumatic stress disorder ("PTSD") and other conditions including joint pain and hearing loss. Soto

Decl. ¶ 3.  He qualifies for VA disability benefits, but was unsuccessful in securing them from the VA on his own.  *Id.* ¶¶ 3–4.  On the recommendation of his brother-in-law (who is also a veteran), Sergeant Soto engaged a private company that helped him obtain benefits in 2019.  *Id.* ¶ 5.  However, the VA did not approve all of his conditions as service-connected, among them the PTSD.  *Id.* ¶ 6.  Sergeant Soto's brother-in-law then recommended Veterans Guardian.  *Id.*

Sergeant Soto contacted Veterans Guardian in 2022.  Soto Decl. ¶ 7.  Veterans Guardian helped him apply for an increased disability rating based on the PTSD from which he suffers by guiding him through the application process, including gathering medical documents and other paperwork.  *Id.*  Sergeant Soto's application prepared with Veterans Guardian's assistance succeeded and the VA approved him for a higher disability rating and increased benefits.  *Id.*  He was very pleased with the help he received and recommended Veterans Guardian to others.  *Id.* ¶ 8.

This summer, Sergeant Soto began working with Veterans Guardian on a new claim seeking a ratings increase based on additional conditions that the VA did not previously approve.  Soto Decl. ¶ 9.  He went back to Veterans Guardian because the Company was effective in helping him the first time.  *Id.* ¶ 11.  The VA did not help him, and he does not believe that VSOs have the expertise to provide services comparable to what he received from Veterans Guardian.  *Id.*  Sergeant Soto understands that Veterans Guardian charges a fee if a claim is successful in

13

increasing the veteran's pay and thinks the fee of five times the amount of monthly increase is fair. *Id.* ¶ 10.

### 3.  Enactment of New Jersey S3292

S3292 was introduced in late October 2022 and voted out of the Senate Military and Veterans Affairs Committee on January 30, 2023.  S. 3292, 220th Leg., (2023), Reg. Sess. 2022–2023 (N.J. 2023).  The Committee's consideration of the legislation lasted approximately one minute, with no testimony or statements from members.  *Committee Meeting – January 30, 2023: Hearing Before S. Comm. On Mil. & Veterans' Affs.*, 220th Leg., 2d Ann. Sess. at 1:36:35–37:32 (N.J. 2023).[2]  The same is true of the Budget Committee meeting on June 27, 2023, *Assembly Budget Meeting: Hearing Before Comm. On Assemb. Budget*, 220th Leg., 2d Ann. Sess. at 11:45–13:04 (N.J. 2023).[3]  There was also no substantive discussion of the bill on June 30, 2023, when the Legislature voted in favor of it.  As far as Plaintiffs are aware, there are no official committee reports or other pre-enactment legislative history materials indicating the legislature's reasons for considering and enacting the law.  The statute itself contains no legislative findings.  *See* P.L. 2023, c. 150.

---

[2]    *Available at* https://www.njleg.state.nj.us/archived-media/2022/SMV-meeting-list/media-player?committee=SMV&agendaDate=2023-01-30-10:00:00&agendaType=M&av=A.

[3]    *Available at* https://www.njleg.state.nj.us/archived-media/2022/ABU-meeting-list/media-player?committee=ABU&agendaDate=2023-06-27-14:00:00&agendaType=M&av=V.

Governor Phil Murphy signed S3292 into law on August 25, 2023, and it took effect on the same day.  *See* P.L. 2023, c. 150 § 2.

### 4.  Impact of New Jersey S3292

For Veterans Guardian, the effect of S3292 was immediate and, for its New Jersey business, devastating.  Once the Company became aware of the law's passage, Veterans Guardian stopped accepting new clients in New Jersey.  Taylor Decl. ¶ 20.  Unless and until the law is enjoined, Veterans Guardian will not conduct business in New Jersey.  *Id.*

The shuttering of Veterans Guardian's business has also deeply harmed the New Jersey clients Veterans Guardian was assisting at the time the law was passed, including Colonel Rudman and Sergeant Soto.  Veterans Guardian is making every effort not to disadvantage them and for that reason may provide assistance with very minimal aspects of their claims without charging a fee.  Taylor Decl. ¶ 21.  Veterans Guardian will not, however, be able to provide its full services to any New Jersey clients.  *Id.*  The Company has refunded payments made by three clients that were remitted after S3292's passage, and will not accept any payments from New Jersey clients who succeed on their claims unless and until the law is enjoined.  *Id.*

In addition to the harm to Veterans Guardian, S3292 is specifically depriving Colonel Rudman and Sergeant Soto of the opportunity to receive skilled assistance with their claims from an organization they believe gives them the best chance to

vindicate their rights before the VA. Both Colonel Rudman and Sergeant Soto were unaware of the law's passage until representatives from Veterans Guardian informed them that the Company would be unable to provide assistance in light of S3292 (although it could potentially provide some support with minimal aspects of the claims). Rudman Decl. ¶ 10; Soto Decl. ¶ 9. Colonel Rudman and Sergeant Soto were frustrated by the news. They want to use Veterans Guardian because they were impressed by the Company's services and had been referred by fellow veterans. Rudman Decl. ¶ 12; Soto Decl. ¶¶ 5, 11. Colonel Rudman has stated that he does not understand why New Jersey would prevent him from working with the organization of his choice to pursue his claims. Rudman Decl. ¶ 12. He believes that the law is anathema to the values and freedoms he worked to protect while serving nearly three decades in the U.S. Army. *Id.*

## ARGUMENT

### I.   LEGAL STANDARD.

Four factors typically guide this Court's consideration of whether to grant a preliminary injunction: Whether "(A) [plaintiffs] are likely to succeed on the merits of their claims, (B) [plaintiffs] are likely to suffer irreparable harm without relief, (C) the balance of harms favors them, and (D) relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted).

"In First Amendment cases," however, "the initial burden [of proof] is flipped." *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 126 (3d Cir. 2023) (alteration in original) (citation omitted). "For a preliminary injunction, as at trial, the government must prove constitutionality under whatever level of scrutiny applies to the speech restriction." *Id.* (citation omitted).

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT S3292 INFRINGES THEIR FIRST AMENDMENT RIGHTS.

### A. S3292 Is an Unlawful Content-Based Restriction on Speech.

"[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *B.H. ex rel. Hawk v. Easton Sch. Dist.*, 725 F.3d 293, 303 (3d Cir. 2013) (alteration in original) (internal quotation marks and citation omitted). Government restrictions on speech that are content-based, or "directed at certain content and . . . aimed at particular speakers," are subject to strict scrutiny and pass constitutional muster only if narrowly tailored to serve a compelling government interest. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2347 (2020) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011)).

#### 1. S3292 Is Subject to Strict Scrutiny.

S3292 falls into that difficult-to-defend category of laws subject to strict scrutiny. The law targets expression in its purest form—speech. Specifically, Section 1.a.(1) bars receiving compensation for "advising or assisting" clients—

actions that by their nature involve communicating a message. *See* P.L. 2023, c. 150 § 1.a.(1). Section 1.a.(2) doubles down on that restriction by prohibiting receipt of compensation for directing referrals—another necessarily speech-driven action— and thus blocking would-be partners from "advising or assisting" the client as well. *See id.* § 1.a.(2) (providing that "[n]o person shall receive compensation for referring any individual to another person to advise or assist this individual with any veterans benefits matter"). Section 1.a.(4) then prohibits compensation for "*any* services" prior to a notice of disagreement, to include advice, assistance, instruction, and other speech-related activities. *Id.* (emphasis added)

In all of these provisions, S3292 exceeds the limitations established under federal law. As described above, chapter 59 of title 38 enacts a number of restrictions and qualification requirements on individuals and entities working on veterans' claims, but cabins those restrictions and requirements to those operating "as . . . agent[s] or attorney[s]." *See* 38 U.S.C. § 5901 ("[N]o individual may act *as an agent or attorney* in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary unless such individual has been recognized for such purposes by the Secretary." (emphasis added)); *id.* § 5904(c)(1) ("[A] fee may not be charged, allowed, or paid *for services of agents and attorneys* with respect to services provided before the date on which a claimant is provided notice of the agency of original jurisdiction's initial decision." (emphasis added)); *see also, e.g.*,

18

38 C.F.R. § 14.636(c) ("*Agents and attorneys* may charge claimants or appellants for representation provided after an agency of original jurisdiction has issued notice of an initial decision on the claim." (emphasis added)).  With the phrase "[n]o person[,]" S3292 erases that distinction and in its place erects a comprehensive barrier that blocks anyone not expressly singled out by the VA for accreditation from being compensated for assisting with the claims process.  In so doing, S3292 directly burdens speech. [4]

But that isn't all.  S3292 targets speech on a particular "topic or subject matter"—namely, speech related to a "[v]eterans benefits matter[,]" defined broadly to mean "the preparation, presentation, or prosecution of any claim affecting any person who has filed or expressed an intent to file a claim for any benefit, program, service, commodity, function, or status . . . pertaining to veterans, their dependents, their survivors, and any other individual eligible for such benefits."  P.L. 2023, c. 150 § 1.d; *see id.* § 1.a.(1) ("No person shall receive compensation for advising or assisting any individual with regard to any veterans benefits matter[.]").  Such

---

[4] Although the last clause of section 1.a.(1) could be read as aligning S3292 with federal law, the more logical reading of the provision is that it bars anyone from advising or assisting veterans for compensation except where federal law explicitly authorizes it—i.e., by an accredited agent or attorney after an initial decision by the agency.  Since section 1.a.(4) of S3292 prohibits compensation for services prior to a notice of decision—contra federal law, which limits its prohibition on compensated services to "agents or attorneys"—it would make no sense for New Jersey to craft section 1.a.(1) to permit "advi[ce] and assist[ance]" for compensation only to jettison that permission in a subsequent provision.

regulations that discriminate based on "topic[s] or subject matter" constitute *content-based* restrictions subject to strict scrutiny. *City of Austin v. Reagan Nat'l Advert. of Austin*, 142 S. Ct. 1464, 1475 (2022) (acknowledging continuing vitality of "precedents recognizing examples of topic or subject-matter discrimination as content based"). That S3292 is aimed at "particular speakers" is equally obvious: it singles out for disparate treatment unaccredited individuals and entities who provide services for compensation. *Am. Ass'n of Pol. Consultants*, 140 S. Ct. at 2341 (citation omitted).

### 2. S3292 Burdens Veterans Guardian's Speech.

As described above, Veterans Guardian engages in communications that are barred under S3292. Those communications—advising, instructing, guiding, and counseling clients through the disability-benefits claims process—are quintessentially expressive. Binding precedent leaves no doubt that, by prohibiting such activities, S3292 impermissibly burdens speech.

In *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), the Supreme Court considered a challenge to a federal law that barred "material support" to organizations designated for government sanctions, to include "expert advice or assistance" that was "derived from scientific, technical or other specialized knowledge." *Id.* at 18, 21 (citation omitted). Rejecting the government's argument that the material-support statute regulated conduct, not speech, the Court explained

that a law "directed at" a speaker because of the content of its message burdens its speech even if the law might also impact non-speech activities. *Id.* at 28; *see also Sorrell*, 564 U.S. at 568 ("An individual's right to speak is implicated when information he or she possesses is subjected to restraints on the way in which the information might be used or disseminated.") (citation omitted). On that point, the Court's decision was unanimous. *See Humanitarian Law Project*, 561 U.S. at 61 (Breyer, J., dissenting) ("[T]he majority properly rejects the Government's argument that the plaintiffs' speech-related activities amount to 'conduct' and should be reviewed as such.").

Following *Humanitarian Law Project*, the Third Circuit rejected New Jersey's argument that speech communicated by a counselor engaging in a particular type of therapy was conduct, not speech. *King v. Governor of New Jersey*, 767 F.3d 216, 225–26 (3d Cir. 2014), *abrogated on other grounds Nat'l Inst. of Fam. & Life Advocs. v. Becerra* (*NIFLA*), 138 S. Ct. 2361 (2018). "[T]he Supreme Court," the Third Circuit observed, "had no difficulty characterizing legal counseling as 'speech[.]'" *Id.* at 225 (citing *Humanitarian Law Project*, 561 U.S. at 27). Accordingly, the court saw "no reason . . . to reach the counter-intuitive conclusion that the verbal communications that occur during . . . counseling are 'conduct.'" *Id.* "Simply put, speech is speech, and it must be analyzed as such for purposes of the First Amendment." *Id.* at 228–29.

21

Binding circuit precedent thus holds that "verbal or written communications, even those that function as vehicles for delivering professional services, are 'speech' for purposes of the First Amendment." *King*, 767 F.3d at 225–26 (citing *Humanitarian Law Project*, 561 U.S. at 27–28). That holding squarely applies to S3292. Section 1.a. of S3292 specifically targets written and oral communications in the form of "advi[ce] and assist[ance]" on any veterans benefits matter, *see* P.L. 2023, c. 150 § 1.a.(1), as well as referrals to others for "advi[ce] and assist[ance][,]" *id.* § 1.a.(2). Other provisions of S3292 likewise implicate communications insofar as they ban all compensated services prior to a notice of disagreement, including advising, assisting, counseling, instructing, and similar speech-driven activities. *Id.* § 1.a.(4).

That S3292 impacts speech occurring in a professional context makes no difference to the analysis. To be sure, the Third Circuit in *King* found that fact significant and accordingly subjected the New Jersey law to lesser scrutiny. 767 F.3d at 229. But the Supreme Court specifically abrogated that aspect of *King*, observing that "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *NIFLA*, 138 S. Ct. at 2371–72; *see id.* at 2371 (criticizing decisions by "[s]ome Courts of Appeals" that "except professional speech from the rule that content-based regulations of speech are subject to strict scrutiny" and citing *King*). "[P]rofessional speech,'" the Court explained, is not a "separate category of speech"

22

worthy of "diminished constitutional protection." *Id*. at 2371–72 (internal quotation marks and citation omitted); *see also Lawyers for Fair Reciprocal Admission v. United States*, 2023 WL 145530, at *6 (D.N.J. Jan. 10, 2023) (recognizing abrogation of this aspect of *King* and observing that "the Supreme Court's decision in [*NIFLA*] held that . . . regulation of [professional] speech requires courts to apply strict scrutiny").

Nor does it matter that New Jersey only prohibits "*receiving compensation*" for certain speech activities, not the speech activities themselves. *See* P.L. 2023, c. 150 (emphasis added). As then-Judge Alito explained, "[i]f government were free to suppress disfavored speech by preventing potential speakers from being paid, there would not be much left of the First Amendment." *Pitt News v. Pappert*, 379 F.3d 96, 106 & n.7 (3d Cir. 2004) (rejecting argument that barring newspaper from being paid for certain advertisements did not violate the First Amendment because the paper was not prohibited from publishing the ads). "Imposing a financial burden on a speaker based on the content of the speaker's expression is a content-based restriction of expression and must be analyzed as such." *Id.*

The Fourth Circuit also dismissed a "profit-based distinction" in *Billups v. City of Charleston*, which involved a city ordinance that prohibited conducting tours for compensation unless the tour guide first obtained a license. 961 F.3d 673, 683–84 (4th Cir. 2020). Defending the law, the City contended that it could not

"constitute a burden on protected speech because tour guides who do not charge for their services can give tours without a license." *Id.* at 683.  But the court explained that the distinction the City drew was "quite beside the point, as speech is 'protected even [when] it is carried in a form that is "sold" for profit.'" *Id.* (alteration in original) (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976)).  "In short," the court found, "the business of leading tours depends on the expression of ideas.  And the Ordinance forbids unlicensed tour guides for hire from expressing those ideas on public thoroughfares.  Such a restriction burdens protected speech and thus implicates the First Amendment." *Id.* (citation omitted).

Taken together, these cases establish that (1) the communications Veterans Guardian makes in the context of its professional activities are speech; (2) that speech is no less protected because it is engaged in as a business; and (3) New Jersey's focus on compensation for speech does not change the analysis.  By *prohibiting* speech based on its message and messenger, therefore, S3292 infringes Veterans Guardian's First Amendment rights.  *Am. Ass'n of Pol. Consultants*, 140 S. Ct. at 2347.

### 3.  S3292 Burdens Colonel Rudman's and Sergeant Soto's Speech.

S3292 not only infringes Veterans Guardian's right to speak—it infringes the rights of Colonel Rudman and Sergeant Soto, as well as other veterans who wish to engage professional assistance with their disability benefits claims.  *First*, the law

24

prevents Colonel Rudman and Sergeant Soto from communicating with the persons of their choice in preparing their disability claims submission. Both veterans are pleased with the services of Veterans Guardian and want to continue working with the Company on their claims. Rudman Decl. ¶ 12; Soto Decl. ¶ 11. S3292 prevents them from communicating with Veterans Guardian, thereby infringing their right to speak. Rudman Decl. ¶ 12; Soto Decl. ¶ 11.

*Second*, S3292 infringes Colonel Rudman's and Sergeant Soto's right to receive information from Veterans Guardian. "[I]t is now well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *see also Kreimer v. Bureau of Police for Town of Morrison*, 958 F.2d 1242, 1252 (3d Cir. 1992) ("Our review of the Supreme Court's decisions confirms that the First Amendment does not merely prohibit the government from enacting laws that censor information, but additionally encompasses the positive right of public access to information and ideas."). In analogous circumstances, the Ninth Circuit found that a law precluding an educator from admitting a particular class of students implicated one such student's "[c]onstitution[ally] protect[ed] . . . right to receive information and ideas." *Pac. Coast Horseshoeing Sch. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020). "[W]hen there is a speaker who is willing to convey . . . information," the court explained, "state restriction[s] of the right to receive information produce actual injury under the First Amendment." *Id.*

25

(alterations in original) (internal quotation marks and citation omitted).  *Cf. Doe ex rel. Doe v. Governor of New Jersey*, 783 F.3d 150, 155 (3d Cir. 2015) (recognizing that "the First Amendment protects both the speaker and the recipient of information" (citation omitted)).

So too here.  Colonel Rudman and Sergeant Soto intended to work with Veterans Guardian because they believed they would benefit from the advice, guidance, and instruction they would receive through that partnership.  By prohibiting Veterans Guardian from doing business in New Jersey, S3292 restricts their and others' right to receive the information Veterans Guardian can provide and thus burdens their First Amendment rights.

**B.    S3292 Unlawfully Restricts Colonel Rudman's and Sergeant Soto's Freedom to Petition the Government for Redress and to Associate to Accomplish That End.**

"[T]he right to petition . . . administrative bodies[] is protected by the first amendment."  *Brookins v. O'Bannon*, 699 F.2d 648, 652 (3d. Cir. 1983) (citation omitted).  And because "[a]n individual's freedom to . . . petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were . . . also guaranteed," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (citation omitted), "[t]he freedom to associate for the purpose of exercising the right of petition is protected conduct as well," *Brookins*, 699 F.3d at 652 (citing *NAACP*

26

*v. Button*, 371 U.S. 415, 430 (1963)); *see also Button,* 371 U.S. at 433–37 (government cannot prevent organizations from advising members on seeking the assistance of particular lawyers in anticipation of litigation). "Infringements on that right may be justified [only] by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623 (collecting cases).

Colonel Rudman and Sergeant Soto undeniably have a right to petition the VA for disability benefits. That right is burdened if regulations impede them from doing so effectively. In Colonel Rudman's and Sergeant Soto's experience, efforts to navigate the VA's claims process alone are likely to be fruitless and VSOs are unable to provide effective assistance. Rudman Decl. ¶ 8; Soto Decl. ¶¶ 3–4. Sergeant Soto wants to use Veterans Guardian because the Company was able to help him secure a rate increase in the past, Soto Decl. ¶ 11, and Colonel Rudman believes that working with Veterans Guardian gives him his best, and possibly only, chance to effectively petition the VA to increase his benefits, Rudman Decl. ¶ 12. By precluding Colonel Rudman and Sergeant Soto from availing themselves of Veterans Guardian's services and thereby maximizing their chances for success on their disability claims, S3292 "substantially impairs" their right to petition the government. *Mirabella v. Villard*, 853 F.3d 641, 656 n.11 (3d. Cir. 2017) (email directing plaintiffs to contact

attorney for township rather than local officials "substantially impair[ed] [their] interest in petitioning the government").

The law also infringes Colonel Rudman's and Sergeant Soto's correlative association rights. As described, the First Amendment right to associate ensures that other First Amendment rights, like the right to petition the government, are vigorously defended. *Roberts*, 468 U.S. at 62. This case shows why: Colonel Rudman and Sergeant Soto believe that discussing their claims, receiving advice and instruction, analyzing, strategizing and otherwise engaging with Veterans Guardian will improve their chances for success before the VA. Without that association, they fear, their applications will be less effective and they will not receive the benefits to which they are entitled. Accordingly, by barring Colonel Rudman and Sergeant Soto from engaging with Veterans Guardian, S3292 infringes the associational right that corresponds to their right to petition the government. *See United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 223–25 (1967) (State Bar rule may not preclude union from paying fees to lawyer representing its members).

## C.    S3292 Cannot Survive Strict or Even Intermediate Scrutiny.

As a content-based restriction on all Plaintiffs' speech, as well as a direct infringement on Colonel Rudman's and Sergeant Soto's right to petition and associate, S3292 triggers strict scrutiny. As described below, it fails that difficult

28

test.  But even if S3292 were content neutral or burdened speech only incidentally, it would likewise fail because it cannot withstand intermediate scrutiny.

1.   To survive strict scrutiny, New Jersey must show that S3292 is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Startzell v. City of Philadelphia*, 533 F.3d 183, 193 (3d Cir. 2008) (citation omitted); *see also Roberts*, 468 U.S. at 623 ("Infringements on [the associational] right may be justified [only] by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." (collecting cases)); *Mirabella*, 641 F.3d at 655–57 (applying free-speech standards of scrutiny to petitions claim).  "To narrowly tailor, the state must choose 'the least restrictive means among available, effective alternatives.'" *Schrader*, 74 F.4th at 127 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)); *cf. Roberts*, 468 U.S. at 626 (State used "least restrictive means" available to advance compelling interest).

The State must do more than show its asserted harms are "'important in the abstract'"; it must instead demonstrate that "'the recited harms are real, not merely conjectural.'" *Wilmoth v. Sec'y of New Jersey*, 731 F. App'x 97, 103–04 (3d Cir. 2018) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 646 (1994)).  "[B]road prophylactic rules in the area of free expression are suspect.  Precision of regulation

must be the touchstone." *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980) (quoting *Button*, 371 U.S. at 438).

S3292 cannot satisfy either prong of the strict-scrutiny test. First, New Jersey cannot demonstrate that the law is "necessary to serve a compelling state interest." *Startzell*, 533 F.3d at 193 (citation omitted). As described above, S3292 is devoid of legislative findings and its legislative history does nothing to illuminate the aims of its drafters or the basis for their concerns. *See supra*. That said, New Jersey's intention in passing the law appears to have been to prevent fraud and protect veterans. *See, e.g.*, Press Release, *Governor Murphy Signs Legislation to Protect Veterans and Their Families When Seeking Assistance with Veterans' Benefits*.[5] While that interest might be valid in the abstract, in enacting S3292, the State identified no evidence of fraud that is "real, not merely conjectural," *Wilmoth*, 731 F. App'x at 104 (internal quotation marks and citation omitted).

Even if the State could show a compelling interest, it cannot demonstrate that less restrictive alternatives—such as existing consumer-fraud provisions, or the existence of applicable *federal* regulations—are inadequate to address that interest. *See Village of Schaumburg*, 444 U.S. at 637 ("Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly." (citation

---

[5]     *Available                                                                               at*
https://www.nj.gov/governor/news/news/562023/20230825a.shtml.

omitted)).  As the Supreme Court has explained, the government may not "lump" good actors together with bad "and refuse to employ more precise measures to separate one kind from the other."  *Id.*

That is exactly what New Jersey has done.  Rather than carefully crafting its regulation of organizations that serve veterans to avoid burdening speech, New Jersey has broadly (and blindly) prohibited compensated "advi[ce] and assist[ance]" from *all* unaccredited entities and individuals and *any* compensated services rendered before a notice of disagreement is filed.  *See* P.L. 2023, c. 150.  Responsible industry participants like Veterans Guardian are lumped together (and shut out of the industry) along with companies that might not be so scrupulous.  Accordingly, New Jersey cannot show that S3292 is sufficiently tailored to justify its content-based restrictions on all Plaintiffs' speech, or its infringement on Colonel Rudman's and Sergeant Soto's right to petition and associate.  *See Button*, 371 U.S. at 433 ("Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." (citation omitted)).

2.    Even if S3292 burdened speech only incidentally (despite expressly targeting "advi[ce] and assist[ance]") and even if it did not discriminate based on content (despite expressly targeting speech related to a "[v]eterans benefits matter"), it would still not survive heightened scrutiny.  *See* P.L. 2023, c. 150.  At a minimum, the government must show that "the recited harms are real, not merely conjectural,

and that the regulation will in fact alleviate these harms in a direct and material way." *Turner*, 512 U.S. at 664 (citation omitted).  In addition, "the means [the State has] chosen" to address a legitimate interest must not "burden substantially more speech than is necessary."  *Id.* at 662 (citation omitted).

Here again, New Jersey cannot satisfy either prong.  As just described, the legislative record evinces nothing to suggest either that the harm is "real" or that S3292 will "alleviate [it] in a direct and material way."  *Turner*, 512 U.S. at 664 (citations omitted).  *Compare King*, 767 F.3d at 222 (finding law passed with "numerous legislative findings regarding the impact" of the prohibited practice satisfied intermediate scrutiny).  Moreover, "the means" New Jersey has chosen consists of an indiscriminate, sweeping prohibition on compensated advice and assistance.  *Turner*, 512 U.S. at 662.  Because the State is unable to show that it endeavored to address real harm, or that it could not have furthered its purported objectives with a tailored law that imposed lesser burdens on speech, S3292 fails intermediate scrutiny as well as strict scrutiny.

### D.   Plaintiffs' First Amendment Challenge Is Likely to Succeed on a Facial and As-Applied Basis.

Typically, a plaintiff making a facial challenge to a statute must establish "that no set of circumstances exists in which [the law] would be valid" or "that the statute lacks any plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citation omitted), *superseded by statute on other grounds*, Pub. L. No. 111–

294, § 3(a), 124 Stat. 3178 (2010).  "In the First Amendment context, however, [the Supreme Court has] recognize[d] a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Id.* (internal quotation marks and citation omitted).

S3292 fails under both theories.  Because the State cannot show that S3292's complete prohibitions on "advising and assisting" are appropriately tailored to advance its purported interest, the law fails strict (and intermediate) scrutiny and there is no set of circumstances in which the law could be constitutionally enforced. *See* P.L. 2023, c. 150.  For the same reason, the unconstitutional application of S3292's content-based prohibitions far outweighs whatever "legitimate sweep" the law might have (if any).  *See Stevens*, 559 U.S. at 472 (citation omitted).

But even if the law's prohibitions could constitutionally be applied to some individuals and entities—such as any actually engaged in bad behavior—no such application would cover Veterans Guardian.  Veterans Guardian takes pains to be fully transparent with its clients so all have a clear understanding at the outset of the working relationship.  Taylor Decl. ¶¶ 15–19.  In particular, the Company works to ensure that clients understand the services it does and does not provide; that it is not accredited by the VA; that there are free services veterans can access to pursue their claims; and that Veteran's Guardian's fee is five times any monthly increase in

33

benefits.  *Id.*  There is no deception, misdirection, fraud, or even surprises in the work Veterans Guardian performs with its clients.  For that reason, S3292 is unconstitutional as applied to Veterans Guardian and to Colonel Rudman and Sergeant Soto insofar as they intend to work with Veterans Guardian to pursue their claims.

## III.   THE OTHER PRELIMINARY INJUNCTION FACTORS WEIGH IN PLAINTIFFS' FAVOR.

### A.   Plaintiffs Will Suffer Immediate and Irreparable Harm If the New Jersey Law is Not Enjoined.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citation omitted); *accord, e.g.*, *Schrader*, 74 F.4th at 128 (quoting *Elrod*, 427 U.S. at 373).  As described above, S3292 infringes the First Amendment rights of all Plaintiffs.  Veterans Guardian is unable to "advi[se] or assist[]" veterans—activities that are quintessentially premised on speech—without being subjected to significant civil fines and other liability.  *See* P.L. 2023, c. 150.  Conversely, Colonel Rudman and Sergeant Soto cannot speak to Veterans Guardian or receive information relevant to their disability claims.  They are also hindered in their capacity to petition the government and are foreclosed from associating with Veterans Guardian for the same purpose.  These constitutional violations are sufficient alone to establish irreparable harm.  Moreover, in this context, injunctive relief "would ensure that '[Veterans

Guardian's] constitutionally-protected conduct is not chilled by . . . reasonable fear'"

of investigation and enforcement under the Consumer Fraud Act. *Schrader*, 74 F.4th

at 129 (citation omitted).

Apart from constitutional injury, S3292 imposes other severe and irreparable

harms.  For Veterans Guardian, the law decimates its business in New Jersey.  S3292

precludes the Company from taking on new clients in the State and prevents it from

receiving compensation for services it has already rendered.  Taylor Decl. ¶¶ 20–21.

What is more, the law forces Veterans Guardian to incur costs providing services at

a minimal level to clients with whom the Company began working before the law

was passed, to mitigate the harm to those veterans from the law's immediate

effective date. *Id.* ¶ 18.  And S3292 interferes with and damages Veterans Guardian's

relationship with those clients because the Company cannot provide them with the

full scope of its services.  None of those losses are recoverable because (among other

reasons) the Attorney General is immune from damages liability. *Kentucky v.

Graham*, 473 U.S. 159, 169 (1985) ("Absent waiver by the State or valid

congressional override, the Eleventh Amendment bars a damages action against a

State in federal court." (citation omitted)).

Colonel Rudman and Sergeant Soto also bear immediate and tangible burdens

from S3292.  Both "want to use" Veterans Guardian to assist them with their claims

and are prevented from doing so by the law.  Rudman Decl. ¶ 12; Soto Decl. ¶ 1.  As

they attest, they chose the Company because they believe Veterans Guardian provides the best, and maybe only, chance for success. Rudman Decl. ¶ 12; Soto Decl. ¶ 11. Accordingly, S3292 burdens Colonel Rudman's and Sergeant Soto's ability to choose how to go about preparing their disability benefit claims and might well result in their failure to successfully petition to increase their benefits.

For all these reasons, Plaintiffs have more than satisfied their burden of showing irreparable harm.

### B.   The Balance of Equities and Public Interest Weigh in Plaintiffs' Favor.

Because this is an action against the Attorney General, the State's interest and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (observing that the factors of harm to the opposing party and the public interest "merge when the Government is the opposing party"). While S3292 severely harms Plaintiffs' speech and imposes other harms as well, the State will suffer no hardship if a preliminary injunction is granted because it has no interest in maintaining or enforcing an unconstitutional law. *Schrader*, 74 F.4th at 128 ("Enforcement of an unconstitutional law vindicates no public interest." (internal quotation marks and citation omitted)).

Even crediting that the government has adequately articulated or justified its interest in protecting veterans in connection with S3292, the law sweeps far too broadly to be appropriately tailored to that end. Moreover, that interest is simply not

36

implicated with respect to Veterans Guardian. Helping veterans is Veterans Guardian's mission, and the Company has a solid track record of successfully furthering that mission. Taylor Decl. ¶¶ 4, 6–7. Indeed, as applied to Veterans Guardian, S3292 is counterproductive. By precluding all paid disability benefit claims services, including Veterans Guardian's overwhelmingly successful services at a modest fee, the law harms New Jersey veterans by blocking an avenue that thousands of veterans have used to navigate the cumbersome VA process and obtain the disability benefits for which they qualify. *Id*. ¶ 6.

Unless enjoined, S3292 will achieve precisely the opposite of its stated objectives. Fewer New Jersey veterans will obtain the disability benefits they deserve for injuries they incurred serving the nation. *See* Taylor Decl. ¶ 6. Enjoining the law's enforcement, on the other hand, will protect veterans' ability to choose paid services like Veterans Guardian and help veterans overall obtain more of the benefits for which they qualify. The public interest in promoting veterans' interests thus weighs heavily in favor of the requested injunctive relief. The First Amendment harms to Plaintiffs, the harm to Veterans Guardian's business, and the harms to veterans' likelihood of obtaining disability benefits for which they qualify tip the balance of harms in favor of a preliminary injunction. *See Schrader*, 74 F.4th at 128.

## CONCLUSION

For all these reasons, Plaintiffs' Motion for Preliminary Injunction should be granted.

Dated: September 26, 2023                    Respectfully submitted,

*/s/* Stephen M. Baldini
Stephen M. Baldini
NJ Bar 0410411990
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
44th Floor
New York, NY 10036
Tel: (212) 872-1000
Email: sbaldini@akingump.com

Mark Herring*
Anthony Pierce*
Martine Cicconi*
James Tysse*
Caroline Wolverton*
David Bethea*
Aleena Ijaz*
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street N.W.
Washington, DC 20006
Tel: (202) 887-4000
Email: mherring@akingump.com
         apierce@akingump.com
         mcicconi@akingump.com
         jtysse@akingump.com
         cwolverton@akingump.com
         dbethea@akingump.com
         aijaz@akingump.com

*Attorneys for the Plaintiffs*
*\*motions to appear pro hac vice pending*

38

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on this 26th day of September, 2023,

a true and correct copy of the foregoing was filed electronically through the Court's

CM/ECF system and will be mailed to Defendant via Certified U.S. Mail at the

following address:

Matthew J. Platkin
Office of the Attorney General
R.J. Hughes Justice Complex
P.O. Box 080
3rd floor W. Wing
Trenton, NJ 08625-0112

*/s/* Stephen M. Baldini
Stephen M. Baldini, N.J. Bar No. 0410411990