**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VETERANS GUARDIAN VA CLAIM CONSULTING, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of New Jersey, <br><br> Defendant. | Civil Action No. 23-20660 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs Veterans Guardian VA Claim Consulting, LLC ("Veterans Guardian"), Colonel John F. Rudman ("Rudman"), and Sergeant Andre Jesus Soto's ("Soto") (collectively "Plaintiffs") Motion for a Preliminary Injunction to enjoin Defendant Matthew J. Platkin (the "Attorney General" or "Defendant"), in his official capacity as Attorney General of New Jersey, from implementing or enforcing New Jersey Senate Bill 3292, P.L. 2023, c. 150.[1] (ECF No. 4.) Defendant opposed the Motion (ECF No. 31), and Plaintiffs replied (ECF No. 33).[2] The Court has carefully considered the parties' submissions and

---

[1] Plaintiffs seek to enjoin the Attorney General and the "Attorney General's officers, agents, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the Order," from enforcing S3292. (Pls.' Moving Br. 2, ECF No. 4.)

[2] Plaintiffs also filed a Motion for a Status Conference (ECF No. 36) to expedite this Court's decision on the pending Motion for a Preliminary Injunction. In light of the findings set forth herein, Plaintiffs' Motion for a Status Conference is denied as moot.

decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiffs' Motion is denied.

## I.   <u>BACKGROUND</u>

In this action, Plaintiffs challenge the constitutionality of New Jersey Senate Bill 3292, P.L. 2023, c. 150 ("S3292"), which prevents businesses like Veterans Guardian from, among other things, charging veterans for assistance with disability claims unless the business is accredited by the United States Veterans Administration ("VA"). (Compl. ¶ 5, ECF No. 1.) Plaintiffs ask the Court to declare that S3292 violates their First Amendment rights and to enjoin Defendant from enforcing the law. (*Id.* at 30.) The relevant facts are summarized below.

### A.   Parties

#### i.   *Veterans Guardian*

Veterans Guardian is a veterans claim consulting organization founded by U.S. Army veterans William Taylor and Scott Greenblatt. (Compl. ¶¶ 28-29.) Veterans Guardian operates nationwide to assist clients with VA disability claim submissions. (Compl. ¶ 29; Pls.' Moving Br. 6, ECF No. 4-1.) Specifically, Veterans Guardian facilitates clients in navigating the VA disability claims process by "reviewing relevant documents, helping develop supporting evidence, identifying claim strategies, and advising on how to prepare and submit a claim." (Compl. ¶ 32.)

Prior to engaging its services, Veterans Guardian requires its prospective clients to enter a Consulting Service Agreement (the "Agreement"). (*Id.* ¶ 36.) Veterans Guardian states that the "compensation [structure] for [its] consulting services is [] clearly laid out" in the Agreement. (*Id.* ¶ 39.) The Agreement delineates that Veterans Guardian "only charges a contingency fee if the veteran's claim is successful." (*Id.*) That is, if a client secures an increase in his or her disability payments, Veterans Guardian's fee is "the difference between the monthly amount of benefits

received pre-claim and the amount post-claim, multiplied by five." (*Id.*) In cases that do not result in an increase in disability payments, Veterans Guardian does not receive compensation. (*Id.* ¶ 40; Pls.' Moving Br. 8.) On the first page of the Agreement, Veterans Guardian also "discloses that free services are available to support veterans in filing VA disability benefits and that clients can achieve a positive outcome with those free services." (Compl. ¶ 40.)

Veterans Guardian contends that it is transparent about its fee arrangements from the outset and provides clients with alternative avenues for free services, which may be utilized in conjunction with paid services. (Pls.' Moving Br. 8.) There is no dispute, however, that Veterans Guardian acts only in its capacity as a "consultant"; Veterans Guardian is *not accredited* by the VA to render such services.[3] (Compl. ¶ 38.)

      ii.     *Rudman and Soto*

Plaintiffs Rudman and Soto are veterans who sought assistance from Veterans Guardian for their disability claims. (Compl. ¶ 4.) Rudman served in the U.S. Army for nearly four decades. (*Id.* ¶ 42.) In August 2019, Rudman submitted a claim for an increased disability rating in connection to a surgery on his left hip. (*Id.* ¶ 48.) Rudman's claim for benefits was later denied on the grounds that his injuries were not "service-related." (*Id.*) In August 2023, Rudman contacted Veterans Guardian for assistance with his disability claim. (*Id.* ¶ 51.) Before Veterans Guardian could assist with Rudman's potential claim, S3292 was enacted, which prohibited "Veterans

---

[3] As discussed *infra*, receiving remuneration for unaccredited assistance violates federal law. *See* 38 U.S.C. § 5901. At present, however, the VA lacks enforcement tools to implement the federal mandates. (Def.'s Opp'n Br. 8, ECF No. 31 (citing Leit Cert. Ex. F at 4).) S3292, accordingly, was enacted by the New Jersey Legislature to fill the gap and provide the Attorney General with an enforcement mechanism to prevent unaccredited organizations from charging money for providing such services in New Jersey. (*Id.* (citing N.J. Stat. Ann. §§ 56:8-1 to 8-219).)

Guardian from receiving compensation for the consulting services that [Rudman] intended to use." (*Id.* ¶ 53.)

Soto served in the U.S. Army for ten years between 2005 and 2015. (*Id.* ¶ 54; *see also* Pls.' Moving Br. 12.) Although Soto states that he qualified for VA disability benefits, he was unsuccessful with obtaining VA benefits on his own. (Compl. ¶ 57.) In 2022, Soto contacted Veterans Guardian for assistance with navigating the disability claims process. (*Id.* ¶¶ 61-62.) A month into preparing Soto's claim, Veterans Guardian informed Soto that S3292 was enacted, and therefore Veterans Guardian "would not be able to provide [the] full [extent of its] services because of the law." (*Id.* ¶ 65.)

### iii.     Defendant

Defendant Matthew J. Platkin is the Attorney General of New Jersey. (Compl. ¶ 13.) The Attorney General is granted the power to enforce violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 56:8-1 to -8-21, and assess penalties for violations. (*Id.*) The Attorney General is duly tasked with enforcing S3292 and addressing any violations thereof, which, as discussed, *infra*, are punishable under the CFA. (*Id.*)

### B.     Statutory Framework

### i.     Federal Law and Regulations

Congress and the VA have enacted rules and standards that govern the process of filing claims with the VA for disabled veterans. (Pls.' Moving Br. 4.) As relevant here, federal law prohibits unaccredited individuals from assisting a claimant with an application for VA benefits. *See* 38 U.S.C. § 5901 (stating that "[n]o individual may act as an agent or attorney[4] in the

_____

[4] Veterans Guardian's representatives are not attorneys and do not act as their clients' agents. (Def.'s Opp'n Br. 2.)

4

preparation, presentation, or prosecution of any" VA claim unless the individual has been accredited by the Secretary of Veteran Affairs (the "Secretary")).

Section § 5904 authorizes the Secretary to recognize individuals for the purposes of acting as agents and attorneys and to set standards for the qualification of such individuals.[5] 38 U.S.C. § 5904(a). The VA's accompanying regulations provide an accreditation system with requirements for agents and attorneys as well as requirements for training, continuing education, and reporting. 38 C.F.R. §§ 14.629-37 (2022). While the VA does not currently have the authority to enforce these requirements under federal law, there are bills pending, including the GUARD VA Benefits Act ("GUARD Act"), which, if passed, would provide the VA with such enforcement authority. (Def.'s Opp'n Br. 7 (citing H.R. 1139, 118th Cong. (2023); S. 740, 118th Cong. (2023)).)[6] Without the GUARD Act in effect, the VA has acknowledged that it must instead rely on "federal, state, and local enforcement agencies . . . for possible prosecution under their laws" because there is no federal enforcement mechanism against unaccredited actors "charging illegal fees[.]" (Def.'s Opp'n Br. 8 (citing Cert. of Assistant Attorney General David E. Leit, Esq. ["Leit Cert."], Ex. F at 4, ECF No. 31-1).)

---

[5] Specifically, individuals seeking VA accreditation must: (1) show they are "of good moral character and in good repute, qualified to render claimants valuable service, and otherwise competent to assist claimants in presenting claims"; (2) show they "have such level of experience or specialized training as [the VA] shall specify"; and (3) "certify to [the VA] that the individual has satisfied any qualifications and standards prescribed by [the VA]." 38 U.S.C. §§ 5904(a)(2)(A)-(C).

[6] Veterans Guardian, through its co-founder and Chief Operating Officer ("COO"), has publicly opposed the GUARD Act. (*See* Def.'s Opp'n Br. 8 (citing Legis. Hearing on H.R. 234; H.R. 854; H.R. 984; H.R. 1139; H.R. 1329; H.R. 1378; H.R. 1529; H.R. 1530 Before the Subcomm. on Disability Assistance and Mem'l Affs. of the Comm. on Veterans' Affs., 118th Cong. 1-4 (2023) (statement of William Taylor, Founder and Chief Operating Officer of Veterans Consulting).

ii.     *Enactment and Impact of S3292*

New Jersey, among other states, has taken initiative by enacting S3292 which would prevent businesses from charging veterans for disability-claims assistance unless those businesses are accredited by the VA. (*Id.* at 8.) S3292 was introduced in late October 2022, and the New Jersey Legislature voted in the bill's favor on June 30, 2023. (Compl. ¶ 66; *see also* Leit Cert. Ex. L at 1.) On August 25, 2023, Governor Murphy signed S3292 into law and S3292 took effect the same day. (Compl. ¶ 67.)

S3292 provides New Jersey with "the means to vindicate federal law's preexisting dictates" as follows:

> Section 1(a)(1) [of S3292] prohibits any person from receiving "compensation for advising or assisting any individual with regard to any veterans benefits matter, except as permitted under federal law." . . . [emphasis omitted]. This parallels 38 U.S.C. § 5901, which prohibits individuals from "act[ing] as an agent or attorney in the preparation, presentation, or prosecution" of veterans benefits' claims, unless they have been accredited by VA. 38 U.S.C. § 5901; *see also* 38 C.F.R. § 14.636(b).
>
> Section 1(a)(2) [of S3292] prohibits individuals from receiving compensation for referrals for veterans' benefits assistance. This parallels 38 C.F.R. § 14.636(c)-(d), which defines the circumstances under which fees may be charged for veterans' benefits assistance and representation. 38 C.F.R. § 14.636(c)-(d).

(Def.'s Opp'n Br. 9-10.) Section 1(c) of S3292 also provides the Attorney General with the ability to take an enforcement action by making violations of the aforesaid provisions punishable as violations of the CFA. (*Id.* at 10); 38 C.F.R. §§ 56-15, -18, -19.

Upon S3292's passage, Veterans Guardian states that it ceased accepting new clients in New Jersey, refunded payments from potential new clients that were remitted after the law was enacted, and only continued to assist with "very minimal aspects" of claims for existing clients without charging a fee. (Compl. ¶ 69.) In light of S3292, Veterans Guardian contends that "[it] is

unable to conduct business in New Jersey and cannot assist [Rudman], [Soto], or any other New Jersey veterans with their [disability] claims." (Pls.' Moving Br. 2.)

### C.    Procedural History

On September 25, 2023, Plaintiffs filed a two-Count Complaint for declaratory and injunctive relief to prevent the Attorney General from enforcing S3292. (*See generally* Compl.) Plaintiffs' Complaint asserts that: (1) S3292 violates the First Amendment by unlawfully restricting speech based on content (Count One); and (2) S3292 violates the First Amendment by unlawfully restricting the freedom to petition the government for redress and a corresponding freedom of association (Count Two). (*See* Compl. ¶¶ 28-30.)

Shortly thereafter, Plaintiffs filed the instant Motion for Preliminary Injunction. (Pls.' Moving Br.) In support of their Motion, Plaintiffs allege a preliminary injunction is warranted because they have shown: (1) a likelihood to succeed on the merits of their First Amendment claim as it pertains to S3292's restrictions; (2) immediate and irreparable harm will follow if the law is not enjoined; and (3) the balance of equities and public interest weigh in favor of the relief sought. (Pls.' Moving Br. 17-37.) The Attorney General opposed the Motion (ECF No. 31), and Plaintiffs replied (ECF No. 33). For the reasons that follow, Plaintiffs' Motion is denied.

## II.    <u>LEGAL STANDARD</u>

In demonstrating a preliminary injunction is warranted, a plaintiff must establish the following elements: "(1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest." *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, No. 14-4984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)). It is settled law that a preliminary injunction is "an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2948, at 129-130 (2d ed. 1995)). Preliminary injunctions are not appropriate remedies "to prevent the possibility of some remote future injury." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

The first two factors, commonly referred to as the "gateway factors," are the "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). Only once these gateway factors are met should a court consider the remaining two factors. *Id.* "A plaintiff's failure to establish any element . . . renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

## III.  DISCUSSION

### A.  Likelihood of Success on the Merits of the First Amendment Claims

The Court begins by considering whether Plaintiffs have shown a substantial likelihood of success on the merits to warrant the "extraordinary" relief of a preliminary injunction. *Novartis Consumer Health*, 290 F.3d at 586; *see also Frumer v. Cheltenham Township*, 709 F.2d 874, 876 (3d Cir. 1983) (discussing that, to obtain preliminary injunctive relief, the moving party must first demonstrate "a reasonable probability of succeeding on the merits of his claim . . . .").

Plaintiffs contend that they have established a likelihood of success on the merits because S3292 infringes on their free speech rights under the First Amendment by imposing content-based restrictions on speech without a compelling government interest. (Pls.' Moving Br. 17-32.) Specifically, Plaintiffs aver that the law cannot survive under strict or intermediate scrutiny review because S3292 is an alleged content-based restriction on speech. (*Id.* at 28-32.) In the alternative,

Plaintiffs argue that they are entitled to preliminary injunctive relief because the law infringes on other First Amendment rights, such as the right to associate or petition the government. (*Id.* at 26-32.) The Attorney General counters that Plaintiffs' Motion must be denied because they have not shown a "likelihood of success on the merits, given that S3292 either does not regulate speech or association rights at all, or, at most, is solely a regulation of commercial speech[.]" (Defs.' Opp'n Br. 12.)

### B. Free Speech Clause of the First Amendment

#### i. *Whether S3292 Regulates Speech*

The Court must consider, at the outset, the Attorney General's argument that S3292 "is particularly uncontroversial from a free-speech perspective because it regulates *conduct*, not speech." (Def.'s Opp'n Br. 15.) Indeed, while the parties have spilled considerable ink over the law's alleged First Amendment violations, the Court must, as a threshold determination, consider whether the law regulates speech at all.

#### a. Speech Versus Conduct

"The Free Speech Clause [of the First Amendment] restricts government regulation of private speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (citations omitted). In cases brought under the Free Speech Clause, however, courts are required in certain cases to make a threshold determination as to whether the challenged law abridges the freedom of speech or merely has an incidental impact on an individual's non-expressive conduct. *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011).

Certain laws, for example, only affect an individual's non-expressive conduct and do not present First Amendment concerns. *See, e.g.*, *United States v. Hansen*, 143 S. Ct. 1932, 1946 (2023) (noting that laws prohibiting "smuggling noncitizens into the country," "providing

counterfeit immigration documents," and "issuing fraudulent Social Security numbers to noncitizens" restrict "nonexpressive conduct—which does not implicate the First Amendment at all"); *see also Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017) (explaining that where a "law's effect on speech [is] only *incidental to its primary effect on conduct*," there is no "abridgment of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.") (emphasis added) (quoting *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006)). In such cases, the court does not analyze the state's motivation in passing the law or the statute's breadth. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986). On the other hand, some laws directly prohibit direct communications or compel individuals or organizations to disseminate a particular message. *Holder v. Humanitarian L. Project*, 561 U.S. 27-28 (2010) (concerning a law that banned speech amounting to "material support" of terrorist organizations). Such cases would more clearly implicate free speech concerns.

As a general matter, regulations of conduct govern what a person "must *do*." *Rumsfeld*, 547 U.S. at 60 (emphasis in original). In *Rumsfeld*, for example, the Supreme Court determined that a law requiring law schools to give military recruiters equal access to on-campus recruiting events regulated conduct and not speech, reasoning that the law affected "what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id.*; *see also id.* at 62 (discussing that laws that prohibit racial discrimination in hiring "will require an employer to take down a sign reading 'White Applicants Only'" but this "hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct"); *see also Hansen*, 143 S. Ct. at 1946.

In other instances, laws focus on conduct, but impose an incidental impact on speech. In *Expressions Hair Design, supra*, the Supreme Court explained that "a law requiring all New York delis to charge $10 for their sandwiches" regulates conduct by dictating how much money a deli owner could charge. 581 U.S. at 47. While this law would affect the deli operators' speech by changing the price listed on the menu or changing how employees communicated about those prices, the Supreme Court explained that this impact would only "indirectly dictate the content of that speech" because "the law's effect on speech would be only incidental to its primary effect on conduct." *Id.*

Here, the Court agrees with the Attorney General that this case is most analogous to *Expressions Hair Design, supra*. (Def.'s Opp'n Br. 15.) That is, S3292 regulates *conduct*, not speech. (*Id.*) The law's primary purpose is to prevent unaccredited agents from *charging fees* for unaccredited services. (*Id.* at 15-16.) Any speech that may be regulated by S3292 is merely incidental to the conduct that New Jersey is actively seeking to regulate. (*Id.*) *Sorrell*, 564 U.S. at 567 (finding that it is "true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech.").[7]

### b.    Content Neutral Versus Content Based

Assuming, *arguendo*, that the First Amendment is implicated here, the next inquiry is whether S3292 is a content-neutral or content-based restriction. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The court must "consider

---

[7] Because the Court finds that the Attorney General has presented sufficient evidence that S3292 is a regulation of conduct, and not speech, Plaintiffs' request for a preliminary injunction based on the Free Speech Clause of the First Amendment can be denied on this basis alone. Out of an abundance of caution, however, the Court will briefly turn to the merits of Plaintiffs' free speech claims.

whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (quoting *Sorrell*, 564 U.S. at 566). Even when a law is facially neutral, a court may find it content based if the law "cannot be 'justified without reference to the content of the regulated speech'" or if the law was "adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (alteration in original).

Plaintiffs contend that S3292 is a content-based restriction on speech since it prevents unaccredited agents (i.e. Veterans Guardian) from receiving compensation "for advising or assisting" their clients with submitting disability claims to the VA. (Pls.' Moving Br. 17-18.) Plaintiffs lend support from *Holder v. Humanitarian L. Project*. 561 U.S. at 1. (*Id.* at 20; *see also* Pls.' Reply 6.) In *Holder*, the plaintiffs claimed that a federal statute prohibiting the provision of "material support" to designated terrorist organizations violated their free speech rights by preventing them from providing legal training and advice to two terrorist organizations. 561 U.S. at 10-11. The defendants in *Holder* responded that the "material support" statute should not be subject to strict scrutiny because it was directed toward "conduct" and not speech. *Id.* at 26-28. The Supreme Court rejected the defendants' argument, finding that the "material support" ban on providing legal training and advice was indeed speech. *Id.* at 28. The Supreme Court's decision was based on its observation that the federal statute banned plaintiffs' proposed activity of "communicating a message" to such organizations. *Id.* That is, the statute regulated speech on the basis of content because "[p]laintiffs want to speak to the [terrorist organizations], and whether they may do so under § 2339B depends on what they say." *Id.* at 27.

The Court is not persuaded that *Holder*'s rationale is applicable in this case. Even if S3292 has some peripheral and incidental effect on speech, i.e., preventing unaccredited agents from

"assisting or advising" veterans, the principal consideration and primary purpose of S3292 is to prevent unaccredited agents from *receiving compensation* for such services. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (explaining that, to determine whether a statute is content neutral, a court must focus on the legislature's purpose for enacting it; when the statute "serves purposes unrelated to the content of expression [it] is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."). Contrary to *Holder*, S3292 is unconcerned with the message or words that are conveyed by Veterans Guardian and its agents. There is no indication that the law was designed to suppress any subject matter, opinion, or concept. It does not express disagreement with any particular message. Indeed, Plaintiffs readily admit that they can comply with S3292 and may continue to advise existing and even prospective clients *so long as they do not charge a fee for their services.* (Pls.' Moving Br. 15; *see also* Pls.' Reply 6 (Veterans Guardian is prohibited from performing its services "*except for free.*" (emphasis added)).) Based on these principles, the Court finds that to the extent that S3292 affects Plaintiffs' speech, it does so neutrally.

### c.   S3292 Survives Intermediate Scrutiny

As a content neutral law, this Court would apply intermediate scrutiny prescribed by *United States v. O'Brien*.[8] 391 U.S. 367, 381 (1968). Under the *O'Brien* test, a content-neutral regulation

---

[8] The Attorney General argues that S3292 falls within the confines of "commercial speech" under the standards prescribed by the Supreme Court in *Central Hudson*. (Def.'s Opp'n Br. 18-24 (citing *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980).) Plaintiffs disagree that S3292 constitutes "commercial speech." (Pls.' Reply 8-10.) While the Court does not necessarily reject the Attorney General's position that S3292 constitutes commercial speech, it notes that "the *Central Hudson* analysis" applies intermediate scrutiny and the standards therein substantially overlap with the *O'Brien* test. *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 138 (3d Cir. 2020). (*See also* Def.'s Opp'n Br. 16 n.15.) Thus, for purposes of this Motion, the Court considers whether Defendant has made a sufficient showing that S3292 survives intermediate scrutiny.

does not violate the First Amendment "[1] if it furthers an important or substantial governmental interest; [2] if the governmental interest is unrelated to the suppression of free expression; and [3] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) (quoting *O'Brien*, 391 U.S. at 377). The third requirement is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

At this stage, the Court finds that the Attorney General has sufficiently demonstrated that S3292 satisfies the *O'Brien* test. First, the Attorney General identifies an important and substantial government interest that S3292 seeks to advance. (Def.'s Opp'n Br. 21-22.) The Attorney General, for example, cites statistics that, as of 2019, approximately 350,000 veterans lived in New Jersey, and over 60,000 of those veterans received disability compensation. (Def.'s Opp'n Br. 4 (citing Leit Cert. Ex. A at 2).) The VA spends considerable resources on compensation and pensions for New Jersey veterans—over $1.25 million annually. (*Id.* (citing Leit Cert. Ex. A at 1).)

The Attorney General also notes that in 2022, the federal government substantially expanded the disability benefits for veterans and added more than twenty medical conditions eligible for benefits. (*Id.* (citing Honoring Our PACT Act of 2022, S.3373, 117th Cong. (2022).) The Attorney General contends that this expansion "fueled an influx of predatory practices targeting veterans" and in 2022 alone, the Federal Trade Commission ("FTC") reported that benefits consultants and other businesses had defrauded veterans of over $414 million. (*Id.* at 4-5 (citing Leit Cert. Ex. D at 1-3).) Between 2018 and 2022, approximately 40% of the VA complaints filed by veterans were made against individuals who were not accredited under federal law to assist with VA claims. (*Id.* at 5 (citing Leit Cert. Ex. F at 5).) Accordingly, at both the federal and state

levels, legislators and regulators responded with laws to protect veterans from non-accredited individuals preying on veterans. (*Id.* (citing Non-Federal Education Assistance Funds, U.S. Dep't of Educ., 87 Fed. Reg. 65,246 (Oct. 28, 2022)).) The Court finds that the Attorney General has made a sufficient showing that S3292 advances the State's interest by ensuring that New Jersey veterans are assisted only by those who have been VA-accredited, to align with the requirements under federal law. (*Id.* at 22-23.) S3292 "thus improves the quality and integrity of veterans-benefits assistance much the same way that licensing requirements enhance the professionalization of other fields." (*Id.* at 23.)

Second, the law is wholly unrelated to the suppression of Plaintiffs' expression. As discussed above, the law is content neutral, as its primary effect is to regulate the conduct of non-accredited agents receiving commissions for providing services, and those aims are unrelated to expression. P.L. 2023, c. 150, at § 1(a)(1).

Third, S3292 is not broader than necessary to serve New Jersey's interests in protecting its veterans. Indeed, where a content-neutral restriction that regulates conduct is at issue under *O'Brien*, the courts hold that "the government should have sufficient leeway to justify such a law based on secondary effects." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 298 (2000); *see also Hill v. Colorado*, 530 U.S. 703, 25-26 (2000) ("[W]hen a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal."). S3292 is sufficiently tailored, as it aligns with existing federal law and tracks the State's interest in vindicating federal law in New Jersey in the absence of any VA enforcement tools. *Compare* P.L. 2023, c. 150, at § 1(a)(1)-(6) *with* 38 U.S.C. §§ 5901-06. It is not, as Plaintiffs claim, "an indiscriminate, sweeping prohibition on compensated advice and assistance," but rather a

prohibition on charging money for *unaccredited* assistance. (Pls.' Moving Br. 32); P.L. 2023, c. 150, at § 1(a)(1); *see also* 38 U.S.C. § 5901.[9]

As such, the Court finds that the law on its face satisfies the *O'Brien* test and survives intermediate scrutiny. Even assuming that S3292 regulates protected speech, Plaintiffs have not shown a likelihood of success or raised serious questions going to the merits of their First Amendment claim. **Plaintiffs'** Motion for a Preliminary Injunction on this basis is denied.

### C.     Remaining First Amendment Claims

Next, Plaintiffs argue that S3292 violates Rudman's and Soto's right to petition the government and violates their freedom of association under the First Amendment. (Pls.' Moving Br. 26-28.) Defendant responds that S3292 does not prevent Plaintiffs from petitioning the government—it only restricts their ability to use Veteran's Guardian in doing so. (Def.'s Opp'n Br. 26.)

"The right to petition the courts, no less than the right to petition the legislative or administrative bodies, is protected by the [F]irst [A]mendment." *Brookins v. O'Bannon*, 699 F.2d 648, 652 (3d Cir. 1983) (citing *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). The freedom to associate for the purpose of exercising the right of petition is also protected. *Id.* (citing *NAACP v. Button*, 371 U.S. 415, 430 (1963)). Supreme Court precedent provides the guiding principle that groups shall be given the right to "unite to assert their legal

---

[9] For these same reasons, the Court disagrees with Plaintiffs' position that S3292 "infringes the [free-speech] rights of Colonel Rudman and Sergeant Soto." (Pls.' Moving Br. 24.) S3292 does not prevent Rudman and Soto from communicating with anyone in preparing their disability claims submissions. Indeed, Rudman and Soto may consult with Veterans Guardian if they wish, and Veterans Guardian may provide them advice. As stated, *infra*, the law places no limits on those communications; it only limits unlicensed entities from receiving *compensation* for providing such advice. *See* P.L. 2023, c. 150, at § 1(a)(1). The law cannot reasonably be said to impose a burden on Rudman's and Soto's speech because Veterans Guardian simply does not wish to respond to Rudman and Soto's communications unless it can be paid for doing so.

rights." *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 580 (1971). The state may not "burden" or "abridge" such rights. *Brookins*, 699 F.2d at 653 (quoting *Healy v. James*, 408 U.S. 169, 181 (1972)).

In their Motion, Rudman and Soto cite *Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017), to lend support to their contention that S3292 substantially impairs their right to petition the government. (Pls.' Moving Br. 27-28.) In *Mirabella*, local officials sent a "no contact" email to the petitioners, barring them from further communicating with township officials. 853 F.3d at 647-48. That government action directly hampered the plaintiffs' right to petition. *Id.* at 656 n.11. *Mirabella*, however, is not controlling here. By contrast, S3292 does not bar Rudman or Soto from filing VA claims or from seeking Veteran's Guardian's consulting services. S3292 merely prohibits Veteran's Guardian from generating a fee for providing such advice. *See* P.L. 2023, c. 150, at § 1(a)(1). Rudman and Soto can still submit VA claims on their own or utilize other accredited consultants. (Def.'s Opp'n Br. 27.) Rudman and Soto's subjective beliefs that all other accredited agents or attorneys will be "unable to provide effective assistance," and that Veterans Guardian will provide "the best, and possibly only, opportunity to achieve a successful result" is speculative and is not the kind of showing necessary for the "extraordinary remedy" of a preliminary injunction. (*Id.*)[10]

---

[10] The Court rejects Rudman and Soto's contention that S3292 violates their associational rights for the same reasons. Plaintiffs contend that Rudman and Soto "believe that discussing their claims, receiving advice . . . analyzing, strategizing, and otherwise engaging with Veterans Guardian will improve their chances for success with the VA," and without that association, "their applications will be less effective[,] and they will not receive the benefits [to] which they are entitled." (Pls.' Moving Br. 28.) As stated, however, S3292 does not act as a categorical bar to utilizing Veteran's Guardian's services; rather, it only precludes Veteran's Guardian from providing such advice for the exchange of compensation. P.L. 2023, c. 150, at § 1(a)(1). To the extent that Rudman and Soto seek to pursue a claim on their own or through the assistance of accredited VA consulting companies, they can certainly still do so.

Finally, Plaintiffs make a last-ditch argument that S3292 fails on a "facial" and "as applied" basis. (Pls.' Moving Br. 32-34.) The overbreadth doctrine provides that a statute is facially invalid if it "prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). The Court does not find the law to be overbroad. As explained, *supra*, Defendant has presented sufficient arguments at this stage to show that S3292 survives intermediate scrutiny, and that New Jersey has legitimate governmental interests in its enactment. Nor does the Court find the law is unconstitutional "as applied" to Veterans Guardian because the Court has determined that S3292 does not violate its First Amendment rights.

As Plaintiffs have failed to show a likelihood of success on the merits as to their claims, they are not entitled to preliminary injunctive relief and their Motion seeking a preliminary injunction is therefore denied. *E.g.*, *Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000) (noting that where plaintiffs are unable to establish a likelihood of success on the merits, the court need not consider the remaining conditions prerequisite to injunctive relief); *see also Emerson O. C.-S. v. Anderson*, No. 20-3774, 2020 WL 1933992, at *7 (D.N.J. Apr. 22, 2020) (declining to address remaining preliminary injunction factors after determining that the movant had not demonstrated a likelihood of success on the merits of his claim).

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is denied. An appropriate order will follow this Memorandum Opinion.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**