UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VETERANS GUARDIAN VA CLAIM CONSULTING, LLC, *et al.*,

Plaintiffs,

v.

JENNIFER DAVENPORT, *in her official capacity as Attorney General of New Jersey*,

Defendant.

Civ. No. 23-20660 (MAS)(JBD)

**MEMORANDUM ORDER**

Before the Court is a joint letter raising a dispute over a series of documents that plaintiffs Veterans Guardian VA Claim Consulting, LLC ("Veterans Guardian"), John F. Rudman, and Andre Jesus Soto, invoking a privilege under the First Amendment, have withheld in discovery. [Dkt. 79.] Defendant challenges the privilege assertion and requests that the Court order plaintiffs to produce the documents. *Id.* The Court has carefully reviewed the parties' arguments and discussed the dispute during a telephone status conference held on June 29, 2026. The Court also has reviewed *in camera* the materials in dispute. For the reasons that follow, the Court will order plaintiffs to produce the documents in issue.

*

The Court writes for the parties and assumes their familiarity with the case. At issue here are 21 documents over which plaintiffs invoke the First Amendment privilege. [Dkt. 79.][1] Plaintiffs do so on the basis that the documents each contain "internal legislative analysis," "draft advocacy-related communications," and/or "internal policy analysis and strategic deliberations concerning pending legislation," [Dkt. 79] at 7; *accord* [Dkt. 79-2], that reveal "Veterans Guardian's internal processes for formulating policy positions, coordinating advocacy efforts, and engaging with the legislative process . . . in furtherance of the Company's rights to petition the government and to associate with others." [Dkt. 79] at 7. Plaintiffs further assert that compelled disclosure of these documents "would chill future association and petition activity, harms that a confidentiality order cannot prevent." *Id.*

Defendant objects to plaintiffs' invocation of a privilege under the First Amendment, arguing that "[t]here is no First Amendment privilege for 'internal legislative analysis' or 'draft advocacy documents'"; that "[t]here is no First Amendment right to refuse to provide evidence in a case a plaintiff has chosen to bring"; and that the First Amendment privilege is not applicable in discovery, "much less in discovery governed by confidentiality order." [Dkt. 79] at 4. Defendant

[1] Plaintiffs invoke the First Amendment privilege for 28 of the 32 documents listed in their privilege log. [Dkt. 79-2.] Of those 28 documents, the First Amendment privilege is the only privilege asserted for all but seven documents. *Id.* Defendant does not challenge the seven documents over which plaintiffs also have asserted the attorney-client privilege and/or the work product doctrine. [Dkt. 79] at 5. Accordingly, 21 documents are in dispute.

further submits that even if the First Amendment privilege could apply in these circumstances, plaintiffs have failed to "provide[] any factual basis that could support a prima facie showing that these documents are properly subject to any privilege." *Id.* Accordingly, defendant submits that plaintiffs must produce the documents at issue, "or, at the very least, provide sufficient information about them to allow [d]efendant to properly assess the asserted privilege." *Id.* at 5.

In an effort to reach a resolution on their dispute, "[t]he parties exchanged correspondence and met several times via video conference," but ultimately reached impasse, leading to the dispute letter before the Court. *Id.* at 1. As noted, the Court held a telephone status conference on June 29, 2026 to discuss, among other things, the parties' privilege dispute. *See* [Dkt. 66]. Following that conference, and at the Court's direction, plaintiffs submitted the documents at issue for *in camera* review. [Dkt. 82] at 1. The dispute is now ripe for resolution.

*

Federal Rule of Civil Procedure 26 governs the scope and timing of discovery in federal civil litigation. Pursuant to that Rule, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Where, as here, otherwise-discoverable materials are withheld or redacted based on a privilege assertion, the "party who asserts a privilege has the burden of proving its existence and applicability." *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990); *see also Fraternal Ord. of Police Pennsylvania Lodge v. Twp. of Springfield*,

668 F. Supp. 3d 375, 386 (E.D. Pa. 2023) ("The party asserting an associational privilege to discovery 'has the burden of proving [the privilege's] existence and applicability.'" (quoting *Knaupf v. Unite Here Loc. 100*, Civ. No. 14-6915 (DEA), 2015 WL 7451190, at *5 (D.N.J. Nov. 23, 2015)) (further citations omitted)).

The First Amendment includes a right to associate. *Fraternal Ord. of Police*, 668 F. Supp. 3d at 385. Relevant here, that right protects individuals' and organizations' expressive association, or association for the purpose of engaging in activities protected by the First Amendment. *Id.* When state action directly affects a group's expressive associational activities, the state must "show a compelling interest that justifies the level of the burden imposed on the groups' expression." *Id.* (quoting *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 438 (3d Cir. 2000)). Discovery requests by a government litigant represent "state action" that, in some circumstances, can impermissibly infringe an organization's associational activities. *Id.* When a party in litigation invokes the First Amendment privilege to withhold otherwise-discoverable materials on that basis, "the party opposing discovery must show 'that enforcement of the discovery request will result in consequences which objectively suggest a 'chilling' impact on associational rights.'" *Id.* at 386 (quoting *Knaupf*, 2015 WL 7451190, at *5 (further citation omitted)). "'This prima facie showing requires appellants to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights.'"

*Id.* (quoting *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009) and then citing *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 489 (10th Cir. 2011).

If the party invoking the First Amendment privilege makes a prima facie showing that enforcement of the discovery request will result in consequences which objectively suggest a "chilling" impact on associational rights, "the burden shifts to the government to show it 'has a sufficiently compelling need for the information that outweighs the other party's interest in keeping it private.'" *Fraternal Ord. of Police*, 668 F. Supp. 3d at 386 (quoting *In re Motor Fuel Temp. Sales Practices Litig.*, 641 F.3d at 492 n.15) (further citations omitted). "At this second step, the question is whether the government has 'demonstrated an interest in obtaining the disclosures it seeks which is sufficient to justify the deterrent effect on the freedom of the constitutionally protected right of association.'" *Id.* (quoting *Perry*, 591 F.3d at 1140 (explaining that the government must "demonstrate that the information sought through the discovery is related to a compelling governmental interest and the least restrictive means of the desired information" (cleaned up)). "[T]he party seeking the discovery must show that the information sought is *highly relevant* to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1141 (emphasis added). Additionally, "[t]he request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

*

As an initial matter, the Court rejects defendant's broad assertions that the First Amendment privilege categorically cannot apply to "internal legislative analysis," "draft advocacy-related communications," and/or "internal policy analysis and strategic deliberations concerning pending legislation"; that the privilege does not apply in the discovery context; and that a plaintiff effectively waives the right to invoke the First Amendment privilege by filing suit. [Dkt. 79] at 4. While the concept of the First Amendment privilege is commonly applied in the context of demands for private donor or member information, *see, e.g., First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), "courts from other Circuits and district courts in this Circuit have found that the associational privilege extends beyond membership lists, and at least one [court of appeals] has held that the privilege can extend to an organization's internal deliberations and communications." *Fraternal Ord. of Police*, 668 F. Supp. 3d at 388 (collecting cases). Moreover, several courts, including those in the Third Circuit, recognize that the First Amendment privilege applies in the discovery context. *See id.* at 385 ("Discovery requests represent 'state action' that may impermissibly affect an organization's associational activities."); *Knaupf*, 2015 WL 7451190, at *5; *see also, e.g.*, *Perry*, 591 F.3d at 1140-41. Finally, while a party's assertion of the First Amendment privilege is qualified and can be overcome if "the information sought is highly relevant," *Perry*, 591 F.3d at 1141, the Court is not aware of any authority supporting defendant's argument that a plaintiff's right to

assert the First Amendment privilege is waived outright simply because it chose to bring an action that implicates associational rights. Accordingly, the Court rejects defendant's categorical argument that the First Amendment privilege cannot apply in these circumstances.

Nevertheless, although the privilege *could* apply in this context, that does not mean that it does. As described above, "the party claiming a First Amendment privilege in an objection to a discovery request bears the burden to make a prima facie showing of the privilege's applicability." *Knaupf*, 2015 WL 7451190, at *5 (citations omitted). Here, the Court concludes that plaintiffs have failed to meet their burden of demonstrating that the First Amendment privilege applies to the materials at issue.

Specifically, plaintiffs have failed to make a prima facie showing that production of the requested materials will have a "chilling" impact on associational rights. Plaintiffs have "offered no facts to suggest that disclosure of the materials would chill association rights." *Id.* (denying request for a protective order regarding discovery requests seeking "membership information," "[u]nion communications," and meeting minutes on First Amendment privilege grounds because the moving party did not show that "production of the requested material" would have "chilling effects" on future association or association members' abilities to foster their beliefs). To the contrary, plaintiffs state only in conclusory fashion that "[c]ompelled disclosure would chill future association and petition activity," [Dkt. 79] at 7,

but they provide no evidence, articulation, reasoning, or additional argument in support of that statement.

Simply saying it does not make it so. On this record, plaintiffs have not met their burden of demonstrating, with facts or evidence, that the First Amendment privilege applies to the documents at issue in the first instance. *See Knaupf*, 2015 WL 7451190, at *5; *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d at 491-92 ("[W]e cannot say that the district court clearly and egregiously erred in concluding that [a witness]'s single, [unsworn] statement was insufficient. The appellants presented significantly less evidence of a chilling effect than what has been deemed sufficient in prior cases."); *cf. Perry*, 591 F.3d at 1143 (finding that party made "a prima facie showing of arguable first amendment infringement by demonstrating consequences which objectively suggest an impact on, or 'chilling' of associational rights" where "[t]hey presented declarations from several individuals attesting to the impact compelled disclosure would have on participation and formulation of strategy" (cleaned up)); *Fraternal Ord. of Police*, 668 F. Supp. 3d at 387-89 (holding that plaintiff satisfied its prima facie burden to demonstrate the associational privilege where it submitted declarations of four members that "g[ave] rise to a 'reasonable inference' that disclosure of members' internal communications w[ould] discourage them from freely exchanging ideas with other members in the future, and thus, infringe up on those members' associational rights"); *First Choice*, 146 S. Ct. at 1125-26 (considering "two unrebutted declarations," among other things, in determining that petitioner could have suffered an "objectively reasonable

chill" to its First Amendment associational rights and thus established an "injury in fact" for purposes of Article III standing); *Better Path Coal. Plan. Grp. v. City of Harrisburg*, Civ. No. 22-00623, 2025 WL 2349806, at *14 (M.D. Pa. Aug. 13, 2025) (explaining that "plaintiffs' proffered arguments regarding chill [could] . . . reach the level of an objectively reasonable probability that compelling a response to [the] interrogatory [in issue] w[ould] chill associational rights" where plaintiffs made two specific arguments on how "[a]llowing government entities access to membership and financial information in response to civil rights lawsuits would chill First Amendment rights"). Moreover, on its independent review of the materials *in camera*, the Court is not persuaded that compelling their disclosure in these circumstances will in fact chill Veterans Guardian's associational rights.

Plaintiffs have not demonstrated that the First Amendment privilege applies to the documents described in rows 1, 2, 4–7, 9–10, 19–25, 27–32 of their privilege log. Those documents shall be produced forthwith.[2]

*

IT IS SO ORDERED this 18th day of August, 2026.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

---

[2] To the extent appropriate, plaintiffs may make appropriate designations consistent with the operative Discovery Confidentiality Order. [Dkt. 60.]