UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VETERANS GUARDIAN VA CLAIM CONSULTING, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER DAVENPORT, *in her official capacity as Attorney General of New Jersey*,<br><br>Defendant. | Civ. No. 23-20660 (MAS)(JBD)<br><br>**MEMORANDUM ORDER** |

In this case, plaintiffs challenge the constitutionality of New Jersey Senate Bill 3292, P.L. 2023, c. 150, a New Jersey statute regulating whom our nation's veterans may hire in the State to help them claim benefits from the United States Department of Veterans Affairs ("VA").[1] The law prohibits, among other things, anyone from receiving compensation for advising or assisting veterans with the preparation of initial benefits claims, except as permitted by federal law. N.J.S.A. § 56:8-228(a)(1), (a)(4). The State of New Jersey contends that S3292 mirrors the reticulated federal scheme governing the preparation of veteran benefits claims.

Plaintiffs here are (1) Veterans Guardian VA Claim Consulting, LLC ("Veterans Guardian"), a nationwide consulting company that charges veterans for advice on how to claim benefits from the VA and which closed its doors in New Jersey out of concern that its business model violated S3292; and (2) Colonel John

---

[1] New Jersey Senate Bill 3292 is the bill that became P.L. 2023, c. 150, which is now codified at N.J.S.A. § 56:8-228. The Court here refers to the law as "S3292."

Rudman and Sergeant Andre Soto, two New Jersey veterans who had sought to use Veterans Guardian's services before it ceased operations in the State. In this action, plaintiffs claim that S3292 unconstitutionally infringes their First Amendment rights. The State of New Jersey disagrees and, through its Attorney General, defends the law's constitutionality.

Presently before the Court is a motion to intervene filed by the Veterans of Foreign Wars of the United States ("VFW"), a nonprofit veteran service organization ("VSO") responsible for the training and quality assurance of claims representatives who prepare, present, and prosecute benefit claims before the VA. The parallel federal scheme governing VA claim preparation is not directly at issue in this case, but the VFW contends that "this litigation necessarily turns upon the scope, operation, and practical realities of the federal accreditation system," and that the VFW's intervention is therefore needed "to provide the Court with an additional and distinct institutional perspective concerning the practical operation of the federal accreditation framework central to the constitutional questions presented." [Dkt. 67-2] at 6, 8. The VFW seeks to intervene not "to become another full participant in this litigation," but for the "limited purpose" of participating in the defense of S3292 by presenting information on the practical operation of the federal framework to aid the Court's evaluation of plaintiffs' constitutional claims. [Dkt. 84] at 17; [Dkt. 67-2] at 5. The VFW specifically requests "the limited participation necessary to review the evidentiary record developed by the existing parties, participate under the Court's [Confidentiality] Order, receive service of

filings, and submit briefing and argument concerning the federal accreditation issues implicated by [p]laintiffs' constitutional challenge [to S3292]." [Dkt. 84] at 17-18.

The Court has carefully considered the parties' briefing on the motion and held oral argument on August 24, 2026. For the following reasons, the Court will deny the VFW's motion to intervene.[2]

## I. BACKGROUND

S3292 imposes restrictions on compensation for the preparation of veteran benefits claims. Long before New Jersey passed its own statute, however, Congress enacted a comprehensive federal scheme that regulates the preparation of such claims. Relevant here, the federal statute and accompanying regulations provide that (1) before anyone "may act as an agent or attorney in the preparation, presentation, or prosecution of any claim" for veteran benefits, he or she must be accredited by the VA; and (2) accredited agents and attorneys may not charge for services provided before the VA's initial benefits decision. 38 U.S.C. § 5901(a); 38 C.F.R. § 14.629(b)(1); 38 U.S.C. § 5904(c)(1); 38 C.F.R. § 14.636(b), (c).

New Jersey passed S3292 in 2023. The State contends that the law mirrors federal law and simply adds civil-enforcement mechanisms that the federal scheme

---

[2] This memorandum order resolves a non-dispositive motion pursuant to 28 U.S.C. § 636(b). *See, e.g.*, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 198 n.6 (3d Cir. 2014) (not precedential) ("[T]he Magistrate Judge considered the motion [to intervene] as a non-dispositive motion under 28 U.S.C. § 636(b), which empowers her to do so even absent consent of the parties."); *In re Gabapentin Patent Litig.*, 321 F. Supp. 2d 653, 661 (D.N.J. 2004) ("A ruling on a motion to intervene is typically treated as non-dispositive.").

lacks. Two provisions of S3292 are primarily at issue in this case. First, Section (a)(1) provides that "[n]o person shall receive compensation for advising or assisting" anyone with "the preparation, presentation, or prosecution of any claim" for veteran benefits, except as allowed by federal law. N.J.S.A. § 56:8-228(a)(1), (d). Second, Section (a)(4) provides that "[n]o person shall receive any compensation for any services rendered before" a veteran appeals the VA's initial benefits decision to the Board of Veterans' Appeals. *Id.* § 56:8-228(a)(4). Additionally, although plaintiffs only challenge Sections (a)(1) and (a)(4), Section (b)(1) also is relevant to the present motion. That section prohibits anyone from advising or assisting with veterans benefit claim preparation for compensation without providing, at the outset of the business relationship, an oral and written disclosure that other organizations and federally chartered VSOs may be able to provide the same and other services to the veteran for free. N.J.S.A. § 56:8-228(b)(1).

On September 25, 2023, plaintiffs filed this action challenging S3292's constitutionality. [Dkt. 1.] As noted, S3292 effectively prevents anyone in the State of New Jersey from receiving compensation for advising or assisting veterans on initial benefits claims, except as permitted by federal law. N.J.S.A. § 56:8-228(a)(1), (a)(4). In their complaint, plaintiffs contend that S3292 "substantially burdens Veterans Guardian's ability to provide such professional advice and, in turn, severely limits the ability of New Jersey veterans, including Col. Rudman and Sgt. Soto, to choose to obtain such advice with respect to their claims for VA

disability benefits," in violation of their First Amendment free-speech rights. [Dkt. 83] at 7-8 (citing [Dkt. 49] ¶¶ 78, 80, 95).

After filing the original complaint, plaintiffs filed a motion for a preliminary injunction to enjoin the Attorney General from implementing and enforcing S3292 against them. [Dkt. 4.] The Court denied the motion, and plaintiffs appealed. [Dkts. 37, 38, 39.] On appeal, the VFW appeared as amicus curiae and, in May 2024, filed an amicus brief in support of the Attorney General, in which it supported affirmance of this Court's preliminary injunction ruling. *Veterans Guardian VA Claim Consulting, LLC v. Platkin*, App. No. 24-1097 (3d Cir.) at [App. Dkt. 51].[3] On April 1, 2025, the Third Circuit vacated this Court's denial of the preliminary injunction, concluding that plaintiffs were likely to succeed in demonstrating that Veterans Guardian's services constitute free speech and that S3292 burdens that speech. *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 217 (3d Cir. 2025). The Court of Appeals remanded the case with instructions to this Court to further develop the factual record regarding the State's asserted interest in protecting veterans from fraud and predatory pricing, and whether S3292 is narrowly tailored to achieve that interest. *Id.* at 219-23. As part of that factual development, the Third Circuit specifically contemplated additional fact-finding regarding the operation of the federal accreditation scheme. *Id.* at 221-223.

---

[3] All further citations to the "App. Dkt." refer to the appellate docket in *Veterans Guardian VA Claim Consulting, LLC v. Platkin*, App. No. 24-1097 (3d Cir.).

On remand, plaintiffs filed an amended complaint on May 19, 2025, and a notice of constitutional question pursuant to Federal Rule of Civil Procedure 5.1 on June 4, 2025. [Dkts. 49, 51.] In the notice, plaintiffs asserted that they "do not challenge the constitutionality of the federal legislative scheme governing disability benefits"; according to plaintiffs, "Veterans Guardian's activities are not implicated by the federal provisions governing disability benefits claims because Veterans Guardian does not act as an 'agent' or 'attorney'" and those provisions therefore "do not infringe [p]laintiffs' First Amendment rights." *Id.* at 1-2 (citations omitted). Plaintiffs acknowledged, however, that this action could "implicate the constitutionality of the federal scheme" in light of the Third Circuit's expression of "serious[ ] doubt" that Section (a)(4) of S3292—which largely tracks Section 5904(c)(1) of the federal code—"is constitutional." *Id.* at 2 (quoting *Veterans Guardian*, 133 F.4th at 222).

On July 15, 2025, the parties submitted a joint discovery plan, and on July 29, 2025, the Court held an initial scheduling conference. [Dkts. 53, 54.] The next day, the Court entered a scheduling order setting a fact discovery deadline of January 23, 2026. [Dkt. 55.] The Court later extended the fact discovery deadline to June 30, 2026. [Dkt. 66.]

During fact discovery, plaintiffs contacted the VFW's general counsel to schedule a Rule 30(b)(6) deposition of the VFW. [Dkt. 83-1] at 4. After providing a subpoena and deposition topics at the VFW's request and having received no response, on May 11, 2026, plaintiffs formally served the VFW with a Rule 45

subpoena for deposition, noticing a deposition date of June 1, 2026. [Dkt. 83-1] at 2-4; [Dkt. 67-5]. On May 28, 2026, outside counsel contacted plaintiffs' counsel, indicating that they had been retained to represent the VFW in connection with the subpoena, and that the VFW would not be able to appear on the noticed deposition date. [Dkt. 83-2.]

Thereafter, on June 4, 2026, the VFW formally objected to the subpoena, asserting that it was "overly broad, overly burdensome, and w[ould] cause unfair expense" and because it "call[ed] for testimony and documentation based on privileged and confidential information, attorney work product, disclosure of the VFW's trade secrets, inaccessible data, and data that can be gathered directly from either [d]efendant or [ ] the [VA]." [Dkt. 83-3] at 2. The VFW also informed plaintiffs that it had prepared a motion to intervene, and that if permitted to intervene, it would be willing to "further discuss appropriate topics for a VFW deposition." *Id.* at 3. Plaintiffs' counsel responded to the VFW's objections by letter and requested that it provide a feasible deposition date before the close of fact discovery. [Dkt. 83-4.] Ultimately, however, plaintiffs withdrew their subpoena, electing to forego deposing the VFW altogether to avoid the need to further extend the discovery schedule. [Dkt. 83] at 9.

On June 12, 2026, less than three weeks before the close of fact discovery, the VFW filed the motion to intervene now before the Court. [Dkt. 67.] The Attorney General consents to the VFW's proposed intervention. [Dkt. 67] at 2; [Dkt. 67-2] at 8. Plaintiffs oppose the motion. [Dkt. 83.]

Shortly after the VFW filed its motion to intervene, the Court received a series of letters from the parties identifying scheduling and discovery disputes. [Dkts. 71, 73, 74, 76, 77.] Relevant here, the Attorney General requested that the Court "hold the fact discovery deadline in abeyance" pending resolution of the VFW's motion to intervene, or alternatively, "extend the fact discovery deadline by sixty days." [Dkt. 71] at 2. In support of the request, the Attorney General identified two unresolved discovery disputes, and explained that the VFW's motion was returnable after the fact discovery deadline and that the VFW had indicated an interest in participating in the parties' remaining depositions. *Id.* at 1. Accordingly, the Attorney General asserted that "[h]olding the fact discovery deadline in abeyance w[ould] promote judicial economy and allow for orderly completion of remaining discovery." *Id.* Plaintiffs opposed both requests to extend the fact discovery deadline, asserting that they were "eager to present their case on the merits," and that neither the VFW's motion nor the Attorney General's "[b]elatedly [p]resented" disputes warranted any delay in the proceedings. [Dkt. 73] at 1-3; *see also* [Dkt. 76] at 8-9.

On June 29, 2026, the Court held a telephone status conference to address, among other things, the various issues that the parties had identified in their letters. Given the age of the case and the disruption another extension would cause, the Court declined to extend the fact discovery deadline. *See* [Dkt. 82] at 2.

Thus, except for a few discrete issues, the parties completed fact discovery on June 30, 2026. *Id.*; [Dkt. 66].[4]

Thereafter, on August 24, 2026, the Court held oral argument on the VFW's motion to intervene. [Dkt. 88.] The motion is now ripe for resolution.

## II. DISCUSSION

The VFW argues that it is entitled to intervene in this action as of right under Federal Rule of Civil Procedure 24(a). Alternatively, the VFW argues that it qualifies for permissive intervention under Rule 24(b). For the reasons set forth below, the Court disagrees on both counts.

### A. Intervention as of Right

Rule 24(a)(2) provides, in pertinent part, that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Third Circuit has interpreted Rule 24(a) to require a movant seeking to intervene to show the following: (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the underlying litigation"; (3) "a threat that the interest will be impaired or affected by the disposition of the underlying action"; and (4) "that the existing parties to the action do not adequately represent the prospective intervenor's interests." *Liberty Mut. Ins. Co. v. Treesdale,*

---

[4] The parties have since begun expert discovery. [Dkt. 95.]

*Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). The moving party bears the burden of establishing each of the four factors, and "failure to satisfy any one of [them] justifies denial of the request [to intervene]." *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, Civ. No. 16-1369 (MAS), 2016 WL 7332732, at *1 (D.N.J. Dec. 16, 2016) (citations omitted), *aff'd,* 681 F. App'x 110 (3d Cir. 2017); *see also Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (each requirement "must be met to intervene as of right." (citation omitted)).

Here, the VFW argues that it is entitled to intervene as of right pursuant to Rule 24(a)(2) because: (1) its motion is timely, since fact discovery was still open at the time it moved to intervene, no final adjudication has occurred, and intervention will not prejudice the existing parties; (2) it has a significantly protectable interest in the subject matter of this litigation, since "the VFW operates directly within the federal accreditation framework central to [p]laintiffs' constitutional claims" and "possesses specialized expertise concerning the practical operation of the federal accreditation and VA benefit claim system"; (3) its interests may be impaired by the disposition of this action, as the VFW may have to modify its operations and how it serves veterans if S3292 is invalidated; and (4) its specific interests will not be adequately represented by the Attorney General. [Dkt. 67-2] at 12-25; *accord* [Dkt. 84] at 8-17.

In response, plaintiffs argue that the advanced stage of the proceedings, the VFW's delay in moving to intervene, and the resulting prejudice to plaintiffs from

that delay render the VFW's motion untimely, and that the VFW's proffered interest in the litigation is at most a generalized advocacy concern rather than a cognizable interest that could be impaired by the resolution of plaintiffs' First Amendment claims in this case. [Dkt. 83] at 11-19. Plaintiffs also argue that, even if the VFW had a cognizable interest in this litigation, it is already adequately represented by the Attorney General. *Id.* at 19-22.

### 1. Timeliness

"Timeliness of an intervention request 'is determined by the totality of the circumstances.'" *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) (quoting *United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, 1181 (3d Cir. 1994)). The "[m]ere passage of time" does not alone render an application untimely. *Mountain Top*, 72 F.3d at 369 (citations omitted). Instead, "to the extent there is a temporal component to the timeliness inquiry, it should be measured from the point which an applicant knows, or should know, its rights are directly affected by the litigation, not . . . from the time the applicant learns of the litigation." *Alcan Aluminum*, 25 F.3d at 1182; *accord Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012) ("[D]elay should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings."). In assessing timeliness, therefore, courts consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top*, 72 F.3d at 369.

Considering the totality of circumstances here, the Court concludes that the VFW's motion is untimely. The VFW knew, or should have known, that its alleged rights were at risk no later than April 1, 2025—when the Third Circuit issued its opinion in Veterans Guardian's appeal of this Court's denial of the motion for a preliminary injunction. Yet the VFW did not move to intervene until June 12, 2026, more than a year later.

The VFW contends that it did not move to intervene earlier because it was not aware "that the issues being litigated would directly implicate [its] operational interests" until a recent order in separate litigation pending in North Carolina, *see* [Dkt. 67-4], and the service of plaintiffs' subpoena directed to it in this case. [Dkt. 67-2] at 13. The Court rejects this argument. The VFW's earlier involvement in plaintiffs' appeal and its own reliance on the Third Circuit's opinion in support of its request to intervene demonstrate clearly that the VFW knew or reasonably should have known much earlier that its stated interests were implicated in this case.[5]

[5] During oral argument, the VFW also seemed to intimate that it waited to intervene "because [it] didn't want to pay the money to participate in discovery and create the record." [Dkt. 92] at 28:9-19. This position is problematic for the VFW for at least three reasons. First, this explanation was not raised in the VFW's motion papers. Second, this position is difficult to reconcile with the VFW's opening brief, in which it asserted that it did, in fact, have a desire to participate in and conduct discovery. [Dkt. 67-2] at 29-30 (noting that the VFW anticipated seeking limited discovery relating to "the federal accreditation statutes and regulations governing veterans' disability benefits representation, the practical operation of the accreditation system, and the distinction [p]laintiffs attempt to draw between 'consulting' and regulated accredited representation activities."). Third, this position does not explain why the limited participation now sought could not have

As noted, the VFW participated in the appeal as amicus curiae and filed a brief in the Third Circuit on the very issues that it now argues require its formal participation in this case. [App. Dkt. 51] at 12-21 (detailing "[t]he evolution of the modern system of federal veterans benefits and the restrictions placed on paid services for veterans seeking benefits"). Moreover, the VFW repeatedly points to the Third Circuit's opinion to justify its requested intervention. [Dkt. 67-2] at 6-7 (arguing that the VFW seeks to intervene "to provide the Court with . . . the specialized institutional and operational perspective the Third Circuit recognized was necessary"); *id.* at 17 (arguing that "[t]he Third Circuit has already recognized that the constitutional questions presented by [p]laintiffs' claims cannot be resolved without a fuller understanding of the federal accreditation framework itself"); *id.* at 23 (same); [Dkt. 84] at 4 (representing that the VFW "seeks only limited intervention for the discrete purpose of assisting the Court in resolving questions concerning the federal accreditation statutes and regulations governing representation before the [VA]—issues that the Third Circuit has already recognized require further factual and legal development.").[6] Neither plaintiffs'

---

been requested earlier. In the end, this colloquy further undermines the VFW's claim that its motion is timely.

[6] As the Court described above, shortly after remand, on June 4, 2025, plaintiffs filed a notice of a constitutional question indicating that this action could "implicate the constitutionality of the federal scheme" in light of the Third Circuit's opinion expressing "serious[ ] doubt" that Section (a)(4) of S3292 (which tracks Section 5904(c)(1) of the federal code) "is constitutional." [Dkt. 51] at 2 (quoting *Veterans Guardian*, 133 F.4th at 222). This notice further belies the VFW's argument that it was not on notice until recently that the disposition of this action could affect its asserted interests.

subpoena nor the opinion in the North Carolina action changed the VFW's legal position; if anything, the subpoena and opinion merely underscored issues that already were apparent from the appeal and the Third Circuit's resulting opinion. Thus, the VFW's stated reason for delay is not persuasive; the record reflects that the grounds for the VFW's claimed need to protect its stated interests arose no later than April 1, 2025.[7]

Nonetheless, the VFW did not file its motion to intervene until June 12, 2026, more than a year after the Third Circuit's opinion, less than three weeks before the June 30 fact discovery deadline (resulting in a return date after the close of fact discovery), and nearly three years since this case began. Fact discovery is now closed, and expert discovery is underway. While "[n]o final adjudication has occurred," [Dkt. 67-2] at 13, this case has advanced significantly since its inception (and in the last year) while the VFW watched from the sidelines.

The VFW's unjustified delay in seeking to intervene also is not without consequence. Allowing the VFW to intervene at this juncture would prejudice plaintiffs and delay the ultimate resolution of this case. On this point, the VFW

---

[7] The Court thinks it likely that the VFW knew perfectly well of its ostensible interest in this case even earlier, in May 2024, when it filed an amicus brief in the Third Circuit. [App. Dkt. 51.] As noted, that brief addressed the same federal accreditation scheme that the VFW now claims warrants its intervention. *Id.* at 12-21. Indeed, in the identity and interest section of the amicus brief, the VFW stated that it "is responsible for the training, accreditation, and quality assurance of more than 1,900 claims representatives who are accredited by the [VA] for the purposes of preparation, presentation, and prosecution of benefit claims before the agency," and the argument section of the brief details the "evolution of the modern system of federal veterans benefits and the restrictions placed on paid services for veterans seeking benefits therein." *Id.* at 7, 12.

argues that its proposed intervention would "neither prejudice the existing parties nor disrupt the orderly progress of this litigation." [Dkt. 84] at 8. The VFW initially asserted that it would seek limited "independent discovery" and potentially request "a modest extension of time" to complete that discovery if permitted to intervene, [Dkt. 67-2] at 28-30, but it later changed course and now says that it "seeks no discovery, no expansion of the factual record, and no delay." [Dkt. 84] at 17; *see also id.* at 8-9; [Dkt. 92] at 28:9-29:8. The VFW instead "seeks only to review the evidentiary record already developed by the parties and to submit briefing addressing the federal accreditation issues implicated by [p]laintiffs' constitutional claims." [Dkt. 84] at 17.

In light of the VFW's self-imposed guardrails, the risk of significant prejudice is not overwhelming. Nonetheless, the VFW's proposed limitations do not altogether eliminate the potential consequences of adding a party at this relatively late stage. This case has already been pending for more than three years. Even if the VFW does not seek additional discovery upon intervention, it will still take time and resources for the parties to provide the VFW with the complete record and coordinate the VFW's participation in forthcoming dispositive motion practice and remaining proceedings. Indeed, the VFW's belated attempt at intervention already created one scheduling dispute, *see* [Dkts. 71, 73, 76], and there is a real risk of further case management complications if the Court were to permit the VFW to intervene as a new party at this stage of the case. *Harish v. Arbit*, Civ. No. 21-11088 (EP), 2026 WL 2938856, at *5 (D.N.J. Sept. 30, 2026) (adopting report and

recommendation's conclusion that motion to intervene was untimely notwithstanding the proposed intervenor's "representation that it would not seek additional discovery or new expert reports" where the "action was nearly four years old, fact discovery was complete, and the Court had already documented a persistent 'churn of motion practice and dispute resolution.'" (citation omitted)). Because the VFW's proposed involvement risks further protracting final resolution of a case in which plaintiffs contend that even minimal delay will irreparably harm them, the Court concludes that the VFW's delay in seeking to intervene would prejudice the parties.

*

The Court concludes that all three timeliness factors weigh against the VFW's proposed intervention. The VFW knew or should have known about its purported interest in this litigation no later than April 1, 2025 but waited to seek intervention until more than a year later—on the eve of the close of fact discovery, after these proceedings had advanced significantly, and without persuasive explanation. The VFW's delay and its failure to justify that delay both weigh heavily against finding the motion timely. Moreover, the risk of prejudice from permitting the VFW to belatedly intervene is present, albeit relatively slight. On balance, the Court concludes that the VFW's motion to intervene is untimely. *Cf. Wallach v. Eaton Corp.*, 837 F.3d 356, 375-78 (3d Cir. 2016) (concluding that "the totality of the timeliness factors" favored intervention where "there was no

meaningful delay" and two of the three timeliness factors weighed in favor of intervention).

### 2. The VFW's Interest in This Litigation

The VFW also fails to meet its burden to demonstrate that it has a sufficient interest in this litigation to merit intervention as of right.

The Third Circuit has recognized that "given the multitude of situations in which intervention controversies can arise, what constitutes . . . a [sufficient] interest 'defies a simple definition.'" *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir 1987) (citation omitted). Thus, in determining what constitutes a sufficient interest for purposes of Rule 24(a), "courts must be flexible and address the specific circumstances of each case." *Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, Civ. No. 22-4905 (JBD), 2024 WL 378691, at *4 (D.N.J. Feb. 1, 2024) (citing *Kleissler*, 157 F.3d at 975-80) (Becker, C.J., concurring)); *see also Liberty Mut. Ins. Co.*, 419 F.3d at 225 ("[W]hen evaluating the relevant interests for intervention . . . [courts] should examine the facts to determine whether the suit would directly alter contractual or other legally protectable rights of the proposed intervenors."). "[P]roposed intervenors need not possess an interest in each and every aspect of the litigation. Instead, '[t]hey are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable.'" *Benjamin*, 701 F.3d at 951 (quoting *Mountain Top*, 72 F.3d at 368) (cleaned up).

That said, "Rule 24(a)(2) imposes real requirements that must be met." *Symbiont Sci. Eng'g & Constr.*, 2024 WL 378691, at *5 (citing *Islamic Soc'y of Basking Ridge*, 2016 WL 7332732, at *1). Indeed, the "legal interest asserted must be a cognizable legal interest, and not simply an interest 'of a general and indefinite character.'" *Brody v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992) (quoting *Harris*, 820 F.2d at 601) (internal quotation marks and further citation omitted). "'[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated[.]'" *AstraZeneca AB v. Dr. Reddy's Laboratories, Ltd.*, Civ. No. 05-5553 (TJB), 2010 WL 4387519, at *5 (D.N.J. Oct. 29, 2010) (quoting *Kleissler*, 157 F.3d at 972).

Here, the VFW asserts that it has "institutional interests in preserving the integrity of the federal accreditation system Congress established to protect veterans and in ensuring that the federal accreditation system is accurately presented and understood by the Court." [Dkt. 84] at 11-12. More specifically, the VFW argues that disposition of plaintiffs' constitutional challenges to S3292 "could materially affect the practical operation and interpretation of the federal accreditation system under [and within] which the VFW and its accredited representatives operate," so "[t]he VFW [ ] possesses substantial institutional and

operational interests in ensuring that the federal accreditation framework is accurately presented and fully understood by the Court." [Dkt. 67-2] at 18; *see also* [Dkt. 84] at 14 (claiming that the VFW's interests "arise directly from [its] longstanding institutional role within the federal accreditation system, the challenged New Jersey statute's integration with that framework, and [p]laintiffs' constitutional theories concerning the operation of federal accreditation law"). The VFW also asserts that it "possesses specialized expertise concerning the practical operation of the federal accreditation and VA benefit claim system"; that "the challenged statute directly affects the [its] institutional interests by [mandating] disclosures informing veterans that [free] accredited representation services are available" which would no longer be required if S3292 is invalidated; and that it may have to modify its training and procedures regarding accredited agents and attorneys if S3292 and/or the federal scheme is disrupted or modified by a ruling in this case. [Dkt. 67-2] at 14, 18; [Dkt. 92] at 16:11-18:5, 48:8-49:19, 54:20-55:4.

The VFW "has not been particularly articulate . . . when describing what its interest is." *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184, 189 (D.N.J. 1999). That deficiency serves in the first instance to highlight the absence of a concrete and protectable legal interest in the outcome of this suit. That said, the Court distills from the briefing and oral argument three main categories of interests that the VFW asserts in support of its motion: (1) ensuring the correct legal interpretation and understanding of the federal statutory scheme in light of its

institutional role in that system; (2) ensuring that veterans are informed of the availability of free accredited representation through federally recognized VSOs like the VFW; and (3) avoiding changes to its own practices. These asserted interests, however, are "of general and indefinite character and tangential and collateral, at best, to the underlying litigation." *Id.* (cleaned up). The Court concludes that the VFW does not have a legally protectable interest in this suit sufficient to justify intervention as of right.

Regarding the VFW's first asserted interest, the Court notes that, although the federal accreditation scheme is not directly challenged in this case, that federal framework still may be relevant to S3292's constitutionality. *See, e.g.*, [Dkt. 51] at 2 (noting that this action could "implicate the constitutionality of the federal scheme" in light of the Third Circuit's opinion); *Veterans Guardian*, 133 F.4th at 221 (directing this Court to consider "how the federal accreditation scheme works or what it covers"). Accordingly, the operation of the federal accreditation system in which the VFW operates may have some bearing on the legal analysis in this case.

Nonetheless, the federal scheme's relevance to this litigation does not alone give the VFW a protectable legal interest in ensuring that the scheme is properly understood. The VFW's stated advisory interest is instead more abstract, generic even. "In many cases . . . the disposition of the action will have some impact on the interests of third parties. To intervene as of right as a party to the litigation, however, the applicant must do more than show that his or her interests may be affected in some incidental manner." *Harris*, 820 F.2d at 601 (citation omitted).

Here, the VFW does not adequately explain how ensuring the proper understanding of the federal framework is a concrete right that the VFW, as a market participant operating within that framework, can vindicate. In that regard, the VFW "has not provided adequate contractual, statutory, or common law support demonstrating that its asserted interests may form the basis for a [nonprofit organization like itself] to intervene as of right" in a case like this one. *W.R. Grace & Co.-Conn.*, 185 F.R.D. at 189.

The VFW relies heavily on the Supreme Court's decision in *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), in support of its stated interest. The VFW argues that *Berger* stands for the proposition that "Rule 24 is construed liberally in favor of intervention, particularly where constitutional challenges to state statutes implicate substantial institutional interests and specialized expertise." [Dkt. 67-2] at 10 (citing *Berger,* 597 U.S. at 191-96). The VFW also asserts that *Berger* held that "participation by entities possessing relevant expertise 'promotes informed federal-court decision making and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests.'" *Id.* at 21 (citing *Berger*, 597 U.S. at 192).

The VFW overreads *Berger*. There, state officials whom North Carolina law expressly authorized to defend the state's statutes sought to intervene in a suit in which a state law had been challenged. *Berger*, 597 U.S. at 193. The Supreme Court held that the officials were entitled to intervene, explaining that "where a

State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *Id.* at 195. In that context, "the participation of lawfully authorized state agents promotes informed federal-court decision making and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Id.* at 192. Thus, the state officials in that case identified a specific statutory authorization supporting their asserted interests, and the Court's opinion addressed "how divided state governments sometimes warrant participation by multiple state officials in federal court." *Id.* at 198. But the opinion did not purport to require intervention by private or even quasi-governmental actors that generally have institutional or operational interests in the outcome of a case.

Here, the VFW is a private nonprofit organization, and neither the federal statutory scheme nor S3292 specifically gives the VFW authority to support or amplify the State's interests in defending the state law at issue here. To be sure, the VFW is a congressionally chartered organization and an important player in the veteran benefits arena writ large. But that does not make it a state agency or government representative with a protectable right in defending the State's sovereign interests. The VFW's charter authorizes it to, among other things, sue and be sued and "do any other act necessary and proper to carry out the purposes of the corporation," but the charter does not designate the VFW as a litigation

representative, nor does it grant the VFW roving authority to intervene in litigation for the purpose of weighing in on challenges to laws that may affect it. *See* 36 U.S.C. §§ 230101, 230102, 230104. Accordingly, the VFW's reliance on *Berger* is misplaced.[8]

In any event, the Court does not think that the VFW's advisory interest in accurately explaining and defending the federal statutory scheme is "sufficiently particularized to justify intervention as of right." *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 349 (M.D. Pa. 2013) (holding that a senator's interest in "defending the constitutionality of the Act [at issue in that case] and ensuring that it is properly interpreted" was not "sufficiently substantial, direct, or legally protectable to warrant intervention"); *see also Sec. Nat'l Ins. Co. v. Amchin*, 309 F.R.D. 217, 221-22 (E.D. Pa. 2015) (holding that the FDIC's "interest based on its role as a government entity charged with managing the receivership and 'acting in furtherance of a broad regulatory scheme,'" "interest in 'ensuring correct precedent,'" and "interest in the outcome of this case as to the interpretation of the specific policy at issue, because that policy may also be at issue in future actions involving the FDIC" were not sufficient for intervention as of right); *Palladino v. Corbett*, Civ. No. 13-5641, 2014 WL 830046, at *4 (E.D. Pa. Mar. 4, 2014) (holding that proposed intervenors did not have a sufficient interest in litigation where they sought "to intervene to protect their interests in 'liberty, religious expression, [and]

---

8 Of course, the absence of express statutory authority does not itself preclude intervention; it contributes only to the conclusion that the VFW cannot establish its asserted interest by invoking *Berger*'s rationale.

freedom from seizure and confiscation'" and to "undermine the plaintiffs' arguments, add factual context to the record based on the movants' 'family values' perspective, and defend the statute at issue."). Instead, the VFW's stated interest is more general and abstract, which is not sufficient to merit intervention. *Cf. Commonwealth of Pennsylvania v. President United States of Am.*, 888 F.3d 52, 58-59 (3d Cir. 2018) (permitting a religious nonprofit corporation to intervene in lawsuit challenging regulations promulgated under the Patient Protection and Affordable Care Act because its interest was "concrete and capable of definition" and it had a distinct relationship with the affected regulatory exemption, which directly affected their religious exercise).[9]

---

[9] The Third Circuit's opinion directing this Court to develop a factual record on remand as to "how the federal accreditation scheme works or what it covers," *Veterans Guardian*, 133 F.4th at 221, likewise does not provide sufficient support for the VFW's request to intervene as of right. The VFW does, to be sure, have relevant information regarding the federal accreditation scheme, and the Third Circuit specifically asked for factual development regarding that framework. But there is a considerable difference between having information relevant to a case and having a legally cognizable interest in the outcome of it. There are many avenues through which a nonparty can assist the Court with additional information that does not require intervention. For example, a non-party may be subpoenaed or seek leave to participate in a case as amicus curiae. But being able to provide relevant information in a case does not, in itself, require intervention under Rule 24(a)(2). Were it otherwise, many recipients of non-party subpoenas interested in the outcome of the case would claim a right to intervene under Rule 24(a)(2), which "would open the floodgates to [full-blown] intervention as of right, something Rule 24(a)(2) clearly did not intend." *AstraZeneca*, 2010 WL 4387519, at *7 (denying proposed intervenor's request to intervene in patent infringement action based on asserted interest in "market[ing] non-infringing products," because "a determination in [the proposed intervenor's] favor would create a slippery slope opening the door to intervention as a matter of right"). For the same reason, the Court rejects the VFW's argument that plaintiffs' subpoena to it is evidence that it has a sufficient interest in this litigation; again, having relevant information and having a sufficient interest for purposes of intervention are not the same. *Islamic*

For these reasons, the Court concludes that the VFW's asserted interest in the proper interpretation and understanding of the federal statutory scheme does not justify intervention in this case.

The VFW's second and third asserted interests are weaker than the first. The VFW says that it has a protectable interest in (1) ensuring that S3292 is upheld in a way that preserves the statute's disclosure requirement, and (2) in avoiding an adverse impact on its own standard practices. *See* [Dkt. 67-2] at 18-19; [Dkt. 92] at 16:11-18:5, 48:8-49:19, 54:20-55:4. Those stated interests also do not justify intervention as of right. As to the disclosure requirement, the VFW argues that its interest flows from the portion of S3292 that requires a person seeking compensation for advising or assisting with veteran benefits claims to communicate to the veteran "both orally and in writing" that "[o]ther organizations, including but not limited to . . . federally chartered [VSOs], may be able to provide you with this service free of charge." N.J.S.A. § 56:8-228(b)(1). The VFW contends that it has an interest in this litigation because if the disclosure requirement of S3292 is invalidated, veterans will not be informed of the availability of the free accredited services that the VFW and other VSOs provide. With respect to its own operations, the VFW argues that if S3292 is invalidated or modified, it might have to train and/or retrain its employees on how to address, revise, and correct veteran benefits

*Soc'y of Basking Ridge*, 2016 WL 7332732, at *3 ("[T]he Court is unaware of[ ] any authority stating that a non-party subjected to a subpoena can intervene in the litigation beyond the scope of the discovery issues implicating that non-party.").

claims that were prepared in the first instance by unaccredited agents like Veterans Guardian.

The VFW fails to show that these interests are sufficiently concrete and legally protectable in this case. A proposed intervenor's interest must be direct and significantly protectable; it cannot be collateral, contingent, or remote. *Harris*, 820 F.2d at 596; *Liberty Mut. Ins. Co.*, 419 F.3d at 220-21. The VFW's asserted interests in preserving S3292's disclosure requirement and avoiding the need to train and retrain its employees, however, are collateral to this lawsuit, which is about the constitutionality of a law prohibiting organizations or individuals from providing specified veterans benefits services for a fee. The VFW offers no persuasive authority supporting the proposition that its training- and disclosure-related interests are sufficient for purposes of intervention as of right. The Court appreciates that assisting veterans is a part of the VFW's mission, and that the VFW wants to protect veterans by ensuring that they are aware of free services and that it can serve its clients efficiently and effectively. That general interest "may be laudable, [but] it is not a legally defined or protected interest." *W.R. Grace & Co.-Conn.*, 185 F.R.D. at 189.

*

The Court concludes that the VFW has failed to identify a sufficient interest in this litigation to warrant intervention as of right.

### 3. Impairment of Interest

Even if it had identified a sufficient and legally protectable interest in this litigation, the VFW still cannot show that the interest will be "in jeopardy in [this] lawsuit." *Brody*, 957 F.2d at 1122. "Under this element of the [Rule 24(a)(2)] test, the [proposed intervenor] must demonstrate that their legal interests may be affected or impaired, as a practical matter[,] by the disposition of the action." *Liberty Mut. Ins. Co.*, 419 F.3d at 226. In determining whether a proposed intervenor's interest will be impaired, courts must "assess the practical consequences of the litigation, and may consider any significant legal effect on the applicant's interest." *Id.* If the moving party only shows that its interest "may be affected in some incidental manner[,]" then it has not sufficiently shown the required "tangible threat to a legally cognizable interest." *Harris*, 820 F.2d at 601 (citation omitted).

The VFW argues that this litigation "could materially affect the broader federally accredited representation framework in which the VFW operates," and, in turn, "impair the VFW's ability to protect its institutional and operational interests under that federal accreditation framework." [Dkt. 67-2] at 22-23; *see also* [Dkt. 84] at 10-14. The VFW also contends that its asserted interests in this litigation will be affected because if S3292 is invalidated, Veterans Guardian will resume advising clients and impair "the VFW's ability to serve those veterans," and unaccredited organizations or individuals would no longer be required to disclose the availability of free resources from accredited VSOs like the VFW. *Id.* at 22;

[Dkt. 92] at 47:22-49:19. The Court does not agree that the outcome of this litigation will have any more than an incidental effect on the VFW and its stated interests.

First, the disposition of this action will not directly affect the VFW's asserted interests in the federal accreditation scheme because that scheme is not challenged here. *See Veterans Guardian*, 133 F.4th at 221 ("Veterans Guardian does not challenge the federal scheme, and we take no position on whether it is valid. But states cannot immunize their laws from constitutional scrutiny by pointing to a federal scheme that may suffer the same constitutional defects."). A judgment in this case that S3292 is unconstitutional could, of course, raise concerns or questions about the constitutionality of the federal accreditation scheme. *See id.* But a decision on the validity of S3292 in this case would not have any significant precedential effect on the VFW's ability to defend against any later, direct challenges to that framework. *Brody*, 957 F.2d at 1123 (although a proposed intervenor need not prove that it "would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief," it still must demonstrate "a tangible threat" to its legal interest by, for example, showing that "a determination of the action in the applicants' absence will have a significant stare decisis effect on their claims, or [that] the applicants' rights may be affected by a proposed remedy."); *see also Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983) (denying state's motion to intervene in action challenging defendant's excessive ocean dumping where the asserted interests in preventing the

designation of a new dump site off the coastline "w[ould] not be affected by the disposition of th[e] case" because the EPA still had to separately evaluate "the validity of the proposed alternative dumping site" and the state would thus "have ample opportunity to present its case" during those separate proceedings). The VFW has not identified a claim or defense that a ruling in this case would place in jeopardy, and thus nothing about the disposition of this suit represents a "tangible threat" to the VFW's ostensible interests. *Brody*, 957 F.2d at 1123.

Second, and somewhat relatedly, the disclosure provision in S3292 also is not challenged in this action, and the VFW has not identified a convincing reason to believe that the relief plaintiffs seek here would place the provision in jeopardy. The amended complaint broadly requests declaratory and injunctive relief against S3292, but plaintiffs represented in their opposition and at oral argument that they challenge only Sections (a)(1) and (a)(4) of S3292; they do not challenge the portion of S3292 imposing the disclosure requirement. [Dkt. 83] at 19; [Dkt. 92] at 34:21-35:11. The Court evaluates the asserted impairment in light of those representations, and the VFW has not explained why adjudication of the challenge as so limited would require invalidation of the disclosure provision. The VFW expresses concern that "the entirety of the statute [c]ould be struck . . . because the two provisions that are being challenged" are "the meat of the statute," [Dkt. 92]

at 47:22-48:1, but the threatened impairment of that portion of the statute, and thus the VFW's second stated interest, is speculative.[10]

Moreover, even if that provision is invalidated, the VFW has not adequately connected the disclosure requirement to a concrete interest of its own. To the contrary, the VFW appears more concerned about how the potential invalidation of that provision will impact veterans that the VFW serves. [Dkt. 67-2] at 8 ("If the [disclosure provision] is enjoined or invalidated . . . the VFW's interest in ensuring *veterans are informed* of the availability of free accredited representation through federally recognized organizations operating within the federal accreditation framework" will be impaired (emphasis added)); *id.* at 18-19 (same).
The invalidation of the disclosure requirement could, theoretically, have a downstream impact on the VFW, caused by an increase in the number of veterans who choose the paid services offered by Veterans Guardian and other unaccredited providers over the VFW's free services. But a hypothetical, incidental effect like that does not amount to the "tangible threat to a legally cognizable interest" required for purposes of intervention as of right. *Harris*, 820 F.2d at 601 (citation omitted); *cf. Kleissler*, 157 F.3d at 972-73 (holding that proposed intervenors had

---

10 This is particularly so in light of the Third Circuit's emphasis in its opinion that this Court must analyze plaintiffs' challenges to separate provisions separately, and its directive that this Court "should distinguish [Sections (a)(1) and (a)(4)] and test the constitutionality of each" on remand. *Veterans Guardian*, 133 F.4th at 221-22. Additionally, Veterans Guardian alleges that it already discloses the availability of free assistance irrespective of S3292, further undermining the assumption that invalidation of the disclosure requirement would necessarily eliminate the disclosure of free services to clients. [Dkt. 49] at ¶¶ 43-44; [Dkt. 49-1] at 2-3, 5-6; [Dkt. 49-2]; [Dkt. 83] at 19.

sufficient interests in litigation where they had identified specific revenue streams or established dependency on contractual relations that would be concretely threatened by the logging injunction at issue in that litigation).

Finally, the training and corrective-assistance burdens that the VFW identifies are too contingent and remote to establish practical impairment. The VFW's impairment theory depends on veterans choosing a paid consultant like Veterans Guardian to assist with benefits claim preparation instead of or in addition to the VFW, some veterans requiring corrective assistance from the VFW as a result, and the VFW facing tangible burdens in response. Any effect on the VFW's hypothetical interest would thus be incidental and far too attenuated to warrant intervention as of right.

*

The VFW does not meet at least three of the four elements necessary to intervene as of right under Rule 24(a)(2): The VFW's motion was untimely; the VFW cannot identify a sufficiently concrete and legally protectable interest in this suit; and the VFW cannot demonstrate that any such interest will be impaired by the disposition of this lawsuit. For these reasons, the Court denies the VFW's motion to intervene as of right.

**B. Permissive Intervention**

The VFW separately argues that the Court should grant it permission to intervene pursuant to Federal Rule of Civil Procedure 24(b). "If a party fails to meet the requirements of Rule 24(a) to intervene as a matter of right, that party

nonetheless may be granted permission to intervene under Rule 24(b)." *McGrath v. Pediatrics*, Civ. No. 19-04714 (MJS), 2022 WL 19521726, at *4 (D.N.J. Aug. 12, 2022). Relevant here, Rule 24(b)(1)(B) provides that "[o]n timely motion, the [C]ourt may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Whether to grant permissive intervention is "highly discretionary." *Brody*, 957 F.2d at 1115. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). And while "a denial of intervention as of right does not automatically mandate a denial of permissive intervention," *Hoots v. Commonwealth of Pa.*, 672 F.2d 1133, 1136 (3d Cir. 1982), the Third Circuit has held that "if intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well." *Brody*, 957 F.2d at 1124.

The Court will exercise its discretion and deny the VFW's alternative request for permissive intervention. Even if the VFW's proposed defense shares common questions with the main action, its request to intervene permissively is untimely and prejudicial for the same reasons set forth above. *See* Fed. R. Civ. P. 24(b)(3); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, App. No. 23-1117, 2024 WL 3342444, at *3 (3d Cir. July 9, 2024) (not precedential) (holding that a proposed intervenor's "untimeliness is fatal to its motion to intervene."); *Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976) ("Whether intervention be claimed of right

or as permissive . . . the application must be 'timely.' If it is untimely, intervention must be denied." (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973))).

Moreover, as a practical matter, the VFW has not adequately explained why it needs full party status to present its own perspective on this case and its views on the operation of the federal accreditation framework. Although the Court has authority to condition intervention and has considered the VFW's offer to accept restrictions, the VFW's requested contribution nevertheless consists principally of legal analysis and statutory explanation, without independent claims, discovery, or evidence. The VFW may well have information and a viewpoint that can aid the Court's development of a factual record regarding "how the federal accreditation scheme works [and] what it covers." *See Veterans Guardian*, 133 F.4th at 221. But the Court does not think that the VFW's participation in this litigation as a party will add anything of value to the proceedings that cannot be achieved through the VFW's participation as amicus curiae. Indeed, "a court may [ ] allow a party to participate in litigation as an amicus curiae where although short of a right to intervene, the amicus has a special interest that justifies his having a say." *Liberty Resources, Inc. v. Phila. Housing Auth.,* 395 F.Supp.2d 206, 209 (E.D. Pa. 2005) (internal quotation marks and citation omitted). "Courts have found the participation of an amicus especially proper where the amicus will ensure complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Id.* (internal quotation marks and citation omitted).

Here, the VFW seeks "to provide the Court with an additional and distinct institutional perspective concerning the practical operation of the federal accreditation framework central to the constitutional questions presented." [Dkt. 67-2] at 8. The VFW's participation in this action as amicus curiae would accomplish this goal by ensuring a complete and plenary presentation of its institutional perspective and the difficult issues concerning the federal accreditation scheme without much of the delay, complication, and potential prejudice if the Court were to permit formal intervention. *See Halderman v. Pennhurst State Sch. & Hosp.*, 612 F.2d 131, 134 (3d Cir. 1979) (denying a motion to intervene and granting leave to file an amicus brief through which the "applicants w[ould] have ample opportunity to present . . . their particular views on the appropriate relief"); *American Lung Ass'n of New Jersey v. Kean*, 670 F. Supp. 1285, 1287 (D.N.J. 1987) (explaining that "despite [its] ruling on intervention, [the Court] granted leave to [proposed intervenor] to participate as amicus curiae . . . in order to consider its alleged insights into the problems presented"), *aff'd*, 871 F.2d 319 (3d Cir. 1989). Indeed, amicus participation allows the VFW to present its expertise on the federal accreditation scheme while limiting or avoiding duplicative briefing, procedural complexity, unnecessary access to the discovery record, and potential delay.

The VFW contends that amicus participation is insufficient because it would not have access to "the confidential evidentiary record that will necessarily inform the Court's consideration of Plaintiffs' constitutional claims." [Dkt. 84] at 7. The Court does not agree. The VFW has not adequately explained why it needs

access to the entire discovery record to "submit briefing and argument concerning the federal accreditation issues implicated by [p]laintiffs' constitutional challenge [to S3292]." [Dkt. 84] at 17-18. To the extent it needs specific information regarding Veterans Guardian's conduct and speech, *see* [Dkt. 92] at 20:1-23:1, 51:18-52:16, the VFW may draw from the public record. Under the circumstances, the Court believes that that is more than sufficient.

Accordingly, the Court invites the VFW to file at the appropriate time a motion to participate in these proceedings as amicus curiae. The VFW's input as an amicus curiae may be particularly suitable to the Court's consideration of the parties' anticipated motions for summary judgment.

Exercising its broad discretion, the Court denies the VFW's alternative request for permissive intervention.

## III. CONCLUSION

For the reasons stated, the VFW's motion to intervene is denied.

**IT IS SO ORDERED** this 28th day of October, 2026.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE